870 A.2d 822

**COMMONWEALTH of Pennsylvania, Appellant/Cross–Appellee**

v.

**Mark N. SPOTZ, Appellee/Cross–Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 8, 2003.

Decided March 29, 2005.

Paul Edward Cherry, Clearfield, for the Com. of PA.

Mary Rebecca Ennis, Broomall, Paul Boas, Pittsburgh, for Mark N. Spotz.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

## *OPINION*

Justice CASTILLE.

The dispositive issue in these cross-appeals is whether the Superior Court erred in finding that trial counsel for appellee/cross-appellant Mark N. Spotz ("appellee") was ineffective, as a matter of law, for failing to object to alleged prosecutorial references to appellee's post-arrest silence. For the following reasons, we reverse the Superior Court's grant of a new trial on this claim, reinstate appellee's judgment of sentence, and dismiss this claim of counsel ineffectiveness, as well as the claims of counsel ineffectiveness raised on appellee's cross-appeal, without prejudice to appellee's right to pursue them under the Post Conviction Relief Act ("PCRA").[1]

On January, 31, 1995, appellee, who was on parole for a robbery conviction at the time, and his brother, Dustin Spotz, engaged in an argument at the home of their mother and stepfather in Clearfield County. The argument began after Dustin's fiancée's son placed a pet gerbil in front of appellee's face while he was watching television. Appellee yelled at the child and threatened to physically harm him, angering Dustin. The argument escalated into a physical confrontation and, during the fight, Dustin stabbed appellee twice in the upper back with a butter knife, slightly wounding him. In response, appellee threatened to kill Dustin and proceeded upstairs, returning with a .9 mm handgun. The argument continued

---

1. 42 Pa.C.S. § 9541 *et seq.*

until appellee fired eight shots at his brother. The first six shots missed, but the last two fatally struck Dustin in the chest. After the victim fell to the ground, appellee leaned over him, spit on his face and stated, "There you go, pussy."

Dustin's fiancée tried to call the police, but appellee grabbed the phone and declared that nobody could call anyone until he escaped the scene. Appellee put the handgun in his pants and attempted to retrieve the spent bullet shells from the kitchen floor. Appellee and his girlfriend, Christine Noland, then fled the house in a vehicle driven by his stepfather. Three days later, on February 3, 1995, police apprehended appellee at a motel in Carlisle, Pennsylvania.[2]

Following his arrest and return to Clearfield County, appellee was charged with first degree murder,[3] third degree murder,[4] voluntary manslaughter,[5] aggravated assault,[6] recklessly endangering another person,[7] carrying a firearm without a license,[8] and former convict not to own a firearm.[9] At

---

2. During a pretrial hearing on appellee's motion for change of venue, references were made to three murders he was accused of committing in Schuylkill, York, and Cumberland Counties between February 1, 1995 and February 3, 1995, after fleeing Clearfield County. These references arose only in the context of discussing alleged sensationalized media coverage in Clearfield County and the resulting potential impact that the three murders could have in selecting an impartial jury. Although evidence of appellee's flight was introduced at trial as consciousness of guilt, there was no mention of the three subsequent killings in this trial. We note that appellee was separately tried, convicted, and sentenced to death for each of the subsequent murders, and each of those death sentences has been upheld by this Court upon direct appeal. *See Commonwealth v. Spotz*, 552 Pa. 499, 716 A.2d 580 (1998), *cert. denied*, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 551 (1999) (Schuylkill County); *Commonwealth v. Spotz*, 562 Pa. 498, 756 A.2d 1139 (2000), *cert. denied*, 532 U.S. 932, 121 S.Ct. 1381, 149 L.Ed.2d 307 (2001) (York County); and *Commonwealth v. Spotz*, 563 Pa. 269, 759 A.2d 1280 (2000), *cert. denied*, 534 U.S. 1104, 122 S.Ct. 902, 151 L.Ed.2d 871 (2002) (Cumberland County).

3. 18 Pa.C.S. § 2502(a).

4. 18 Pa.C.S. § 2502(c).

5. 18 Pa.C.S. § 2503.

6. 18 Pa.C.S. § 2702(a).

7. 18 Pa.C.S. § 2705.

8. 18 Pa.C.S. § 6106.

9. 18 Pa.C.S. §§ 6105, 6106.

his subsequent jury trial, appellee claimed self-defense and defense of others, arguing for an outright acquittal of the non-firearms charges. In support of this defense, appellee testified and claimed that Dustin had a knife in each hand and was about to attack him, his stepfather, and his mother; only then did he shoot and kill Dustin in defensive response. Appellee further claimed that Dustin had abused both his mother and appellee during appellee's childhood, including an incident in 1989 where Dustin stabbed appellee in his hand, requiring medical treatment.

On cross-examination, the prosecutor questioned appellee about his failure to help his brother after shooting him, his flight, and his subsequent failure to report the shooting to police on the night in question and to tell the police that he was defending himself.[10] The primary focus of this exchange was upon appellee's conduct immediately after the killing:

Q: You were bleeding heavily?

A: I said my only concern was if I was going to die. I was bleeding, man. I was bleeding bad. I was hurting. I didn't know what was happening.

Q: But you didn't go to the DuBois Hospital; you didn't go to the Clearfield Hospital. Why?

A: When I was walking across the parking lot, Chris[tine Noland] starting filling my head with a lot of stuff that just didn't make sense. To my knowledge and the way I remember, my brother wasn't dead when I left. He was still alive. He was on the floor. Everything—I mean, a lot of things I remember now that weren't clear when this stuff happened. You know. It was traumatic, you know, I was shocked. I didn't understand a lot of things for a long time.

She told me I killed my brother. I was on the run from parole. And if I went in the hospital, the cops would arrest me. Now, she had me scared. One, I didn't want to go

10. Evidence of a defendant's flight and/or concealment following a crime is admissible to establish an inference of consciousness of guilt. *See, e.g., Commonwealth v. Williams,* 532 Pa. 265, 615 A.2d 716, 721 (1992).

back to jail for anymore nonsense like getting speeding tickets. And two, she said I killed somebody that I didn't know I killed, you know. And to me, I didn't kill him.

Q: And you didn't stick around to help your brother, either; did you?

A: I did what I could do.

Q: You didn't stay to report this to the authorities that night?

A: I went to the hospital, man. I was stabbed.

Q: You didn't go into the hospital?

A: I didn't say I went in. I went.

Q: Did you go back to Chestnut Grove to talk to the police?

A: No.

Q: No.

A: No.

Q: To tell them that you were defending yourself. Did you tell the police that?

A: I just believe I—

Q: Answer my question, sir. Did you tell the police that night that you were defending yourself?

A: I didn't talk to the police that night.

N.T. 9/25/1995 at 150–52.

The prosecutor immediately followed this exchange with two questions which, although they did not specifically refer to appellee's arrest, nevertheless were broadly phrased as to encompass both pre-arrest and post-arrest periods:

Q: Other than today, did you **ever** tell the police that you were defending yourself?

A: I never talked to the police to this day. They never asked me questions. They never asked me anything.

Q: The police **never** talked to you, or attempted to talk to you?

A: They said things to me. They never tried to question me. They put guns in my face and said if I ever walked the

street, they'd hunt me down and kill me theirself [sic]. That's what the cops said to me.

N.T. 9/25/1995 at 152 (emphases supplied). Appellee's counsel did not object to either question.

During closing argument, the prosecutor argued to the jury that the evidence showed that appellee did not act in self-defense, and in highlighting why that was so, he made reference to appellee's conduct after the killing, including his threat to kill his brother after being stabbed, his flight after shooting his brother, and his failure to relate to the authorities that he was defending himself. In this argument, the prosecutor's primary focus again was on appellee's conduct on the night of the killing. The prosecutor nevertheless again made a single, broad temporal reference which encompassed the post-arrest period:

But, no, he came right back down [the stairs]. He came right back down. Another discrepancy in their claim of self-defense. Testimony was you mother F'n son of a bitch, you're dead. He said that. Does that sound like somebody in self-defense?

He **never** told the authorities that he was defending himself. Why? Because he fled. Does that sound like somebody who is defending himself and others, that he fled, didn't stay there to tell the police what happened? Does that sound like somebody who is defending himself or defending his family? No. Instead, he fled, he took off.

N.T. 9/26/95 at 45–46 (emphasis supplied). Again, appellee's trial counsel forwarded no objection.

With respect to the homicide charge, the trial court instructed the jury on first and third degree murder, as well as "heat of passion" voluntary manslaughter.[11] The court also charged the jury on justification/self-defense.[12] N.T. 9/26/95 at 54–55, 81–83. On September 26, 1995, the jury acquitted appellee of

---

11. *See* 18 Pa.C.S. § 2503(a).

12. *See* 18 Pa.C.S. § 501 *et seq.* The court did not issue an "unreasonable belief" of justification/self-defense voluntary manslaughter charge. *See* 18 Pa.C.S. § 2503(b).

first and third degree murder, but convicted him of voluntary manslaughter, aggravated assault, recklessly endangering another person, and the firearms offenses. On October 17, 1995, the trial court sentenced appellee to an aggregate term of seventeen and one-half to thirty-five years of imprisonment. No timely direct appeal was filed.

On January 16, 1996, appellee filed a timely petition for PCRA relief in which he claimed ineffective assistance by his trial counsel for failing to timely appeal his judgment of sentence, and seeking *nunc pro tunc* reinstatement of his direct appeal rights. On November 17, 1998, following a hearing, appellee was granted that relief and he later filed a timely *nunc pro tunc* appeal. In his subsequently-filed Pa. R.A.P.1925(b) statement of matters complained of on appeal, appellee alleged several ineffective assistance of counsel claims and several claims of trial court error. On December 22, 1998, the trial court filed an opinion in which it briefly addressed the listed claims, but also noted that it was hamstrung in its evaluation of the claims since no evidentiary hearing had been held regarding the ineffective assistance of counsel claims and, in the court's view, such a hearing might be necessary to properly resolve the claims.

On February 8, 1999, appellee's then-counsel filed a motion for withdrawal of appearance. The Superior Court granted the motion, as well as a concomitant motion for leave to strike and re-file briefs. Appellee's current counsel then filed an amended Rule 1925(b) statement alleging that trial counsel was ineffective in six additional instances, and that the cumulation of these issues entitled appellee to relief. No claims of trial court error were raised therein. The brief that counsel then filed in the Superior Court likewise raised no claims of trial court error, but instead, listed six claims of ineffective assistance of trial counsel and a derivative seventh claim respecting the cumulative effect of the specific claims. Due to the unusual procedural posture of the case, no hearing on the ineffectiveness claims had been held, trial counsel had not been heard from, and the trial court did not address them.

On October 4, 2001, the Superior Court panel issued a memorandum decision granting appellee summary relief on his claim that trial counsel was ineffective in failing to object to the above-quoted cross-examination of appellee and the prosecutor's closing argument on the grounds that they included impermissible and inherently prejudicial references to his post-arrest silence. Accordingly, the panel reversed the judgment of sentence and remanded for a new trial. Given this disposition, the panel deemed it unnecessary to address appellee's other ineffective assistance of counsel claims.

In finding trial counsel ineffective, the panel first recognized that neither the U.S. Constitution nor the Pennsylvania Constitution preclude references to a criminal defendant's pre-arrest silence. Slip op. at 7 (citing *Commonwealth v. Bolus,* 545 Pa. 103, 680 A.2d 839 (1996)). On the question of whether the references here involved pre-arrest or post-arrest silence, the panel thought that this case was "remarkably similar" to *Commonwealth v. Turner,* 499 Pa. 579, 454 A.2d 537 (1982), a case involving a preserved objection to a reference to post-arrest silence, and in which this Court granted a new trial. In *Turner,* the prosecutor's cross-examination of the defendant asked whether he had "ever" told police the version of events he had just testified to—which, as here, went to self-defense. Turner's counsel timely objected before Turner could answer the question, the objection was sustained, and a cautionary instruction was issued, but the court refused counsel's additional request for a mistrial. This Court held that the prosecutor's reference encompassed post-arrest silence, and therefore was impermissible, and although it was subject to harmless error analysis, it could not be deemed harmless beyond a reasonable doubt under the facts of that case.

In addition to *Turner,* the panel below cited this Court's decision in *Commonwealth v. Clark,* 533 Pa. 579, 626 A.2d 154 (1993), and noted that *Clark* precluded it from holding that the temporal nature of the references in this case (*i.e.,* "ever" and "never") were limited to a pre-arrest failure to speak to police. Because the references here were materially "identical" to the

questions posed in *Turner* and *Clark*, the panel concluded that appellee's claim that his counsel was ineffective for failing to object possessed arguable merit. Slip op. at 9.

The panel then turned to the questions of reasonable basis and prejudice. The fact that there had been no hearing below, no testimony from counsel, and no expression of view from the trial court did not cause the panel any concern in resolving the claim. Instead, the panel resolved these aspects of the ineffectiveness inquiry as a matter of law, and in the following cursory manner:

Although there has been no evidentiary hearing on the matter, we fail to see any possible reasonable basis for trial counsel's inaction. Once the questions were asked, trial counsel should have objected to preserve the issue, and requested a mistrial outside the hearing of the jury. Trial counsel here did absolutely nothing. Moreover, the final prong of the ineffectiveness test, prejudice to the Appellant, is obvious. As noted earlier, we recognize that there exists a strong disposition on the part of jurors to consider the exercise of the Fifth Amendment privilege as an admission of guilt. *Turner*, 499 Pa. at 582, 454 A.2d at 539. Thus, in accordance with *Turner, supra,* we find the jury may have impermissibly concluded that Appellant's exercise of his right to remain silent was an implicit admission of guilt. Consequently, because of its nature, an impermissible reference to the accused's post-arrest right to remain silence [sic] is innately prejudicial. *Clark,* 533 Pa. [at] 587, 626 A.2d at 158.

Slip op. at 10–11.

The Commonwealth filed a petition for allowance of appeal challenging the panel's summary finding that trial counsel was ineffective. Appellee filed a protective cross-petition alleging that the Superior Court erred in failing to address and resolve his additional ineffective assistance of counsel claims. Both the petition and the cross-petition were granted.

At the outset, we note that review in this direct appeal is complicated by the fact that the substantive claims are collat-

eral claims assailing the performance of trial counsel, issues which were raised for the first time on appeal, and as to which there was no hearing below or findings by the trial court. In *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), which was filed after the Superior Court decided this case, this Court abrogated the procedural rule announced in *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977), which had required new counsel to raise claims of previous counsel's ineffectiveness at the first appropriate opportunity after new counsel entered the case, even if that first opportunity was on direct appeal and the claims of ineffectiveness were not raised in the trial court. The new rule fashioned in *Grant* generally requires a defendant to "wait to raise claims of ineffective assistance of trial counsel until collateral review." 813 A.2d at 738. *Grant* applied the new rule to the parties in that case, dismissing Grant's claims of ineffective assistance of trial counsel without prejudice to his ability to raise the claims on collateral review. Additionally, the *Grant* Court held that this new rule should apply retroactively to "any other cases on direct appeal where the issue of ineffectiveness was properly raised and preserved." *Id.* at 738–39.

This Court has since limited the retroactive application of the *Grant* rule in a way which is implicated here. Specifically, we have held that "the retroactive application of *Grant* does not apply to claims of ineffective assistance of counsel where the intermediate appellate court rendered a merits disposition prior to the issuance of the decision in *Grant.*" *Commonwealth v. Bethea*, 574 Pa. 100, 828 A.2d 1066, 1070 n. 2 (2003), *cert. denied*, 540 U.S. 1118, 124 S.Ct. 1065, 157 L.Ed.2d 911 (2004). Because the Superior Court in this case rendered a merits disposition on the single issue of ineffective assistance which it addressed prior to this Court's decision in *Grant*, the general rule of deferral announced in *Grant* does not necessarily apply to this claim. Accordingly, if this Court were to determine that the Superior Court's award of relief on the claim was appropriate on the merits, the award properly should stand; by the same token, if we are able to make a definitive determination that the claim should fail on this

record as a matter of law, rejection of the claim would be appropriate. *Bethea*, 828 A.2d at 1076.

"[T]he test for counsel ineffectiveness is the same under both the Pennsylvania and federal Constitutions: it is the performance and prejudice test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *Commonwealth v. Gribble*, 863 A.2d 455, 460 (Pa. 2004) (collecting cases, including *Commonwealth v. (Charles) Pierce*, 515 Pa.153, 527 A.2d 973, 976–77 (1987), which held that the Pennsylvania constitutional standard for assessing ineffectiveness claims is the same as *Strickland*, including the standard for prejudice).

To better focus the *Strickland* analysis, this Court has applied the performance part of the test by looking both to the arguable merit of the claim lodged against counsel as well as the objective reasonableness of the path taken, or not taken, by counsel. *E.g.,* [*Commonwealth v.*] *Bomar*, 573 Pa. 426, 826 A.2d [831,] 855 n. 19 [(2003), *cert. denied*, 540 U.S. 1115, 124 S.Ct. 1053, 157 L.Ed.2d 906 (2004)]. Thus, the constitutional ineffectiveness standard requires the defendant to rebut the presumption of professional competence by demonstrating that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different. *Commonwealth v. (Michael) Pierce*, 567 Pa.186, 786 A.2d 203, 213 (2001); *Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326, 333 (1999). A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *(Michael) Pierce*, 786 A.2d at 221–23; *see also Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 701 (1998) ("If it is clear that Appellant has not demonstrated that counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met.")

*Id.* at 460–61 (footnote omitted). The question of whether counsel was ineffective can have both factual and legal elements. In this case, however, there has been no evidentiary hearing, the counsel whose performance is at issue has not been heard from, and there have been no factual determinations made by the trial court. The Superior Court essentially found that counsel was ineffective as a matter of law for failing to object. This purely legal determination is entitled to no deference; thus, this Court's review of the question as it presents itself *sub judice* is plenary.

The Commonwealth argues as appellant that the references at issue were not to appellee's post-arrest silence, but rather to his actions prior to any police involvement or custody. The Commonwealth submits that the trial prosecutor's point was to emphasize appellee's flight, such conduct being admissible to demonstrate his consciousness of guilt and to rebut his justification defense. The Commonwealth argues in the alternative that, if the prosecutor's references implicated appellee's silence, they nevertheless were not objectionable because, when viewed in context, they focused only upon the pre-arrest period. The Commonwealth also argues that appellee did not demonstrate that he suffered *Strickland/Pierce* prejudice. The Commonwealth notes that appellee was acquitted of the more serious charges of first degree murder and third degree murder; and that the verdict indicates that the jury accepted, at least in some measure, appellee's self-defense theory, and is strong proof that he was not prejudiced by counsel's failure to object.

Appellee responds that the Commonwealth's argument that the prosecutor's references related only to appellee's flight and consciousness of guilt is misguided because the prosecutor never employed those terms. Appellee further argues that by employing the broad phrase, "[o]ther than today, did you ever ...", the prosecutor focused on a time frame which clearly encompassed the post-arrest period. Appellee submits that the prosecutor's comments clearly were objectionable and counsel was ineffective because he failed to object, move for a mistrial, or request a cautionary instruction. Appellee also

argues that the comments were prejudicial, stressing that the prosecutor's further comment in his closing argument served to compound the prejudice.

In the seminal case of *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the U.S. Supreme Court determined that prosecutorial comment at trial on a defendant's post-*Miranda* [13] silence may violate due process, and that the prosecution generally may not impeach a testifying defendant with the fact of his post-*Miranda* silence. The Court reasoned that it would be fundamentally unfair and a deprivation of due process to provide *Miranda* warnings, which imply that silence carries no penalty, and then allow the defendant's post-*Miranda* silence to be used by the prosecution as impeachment at trial. *See Doyle*, 426 U.S. at 617–18, 96 S.Ct. at 2244–45. In addition, the Court noted, when silence follows upon issuance of *Miranda* warnings, it may be a result of an exercise of *Miranda* rights (rather than, for example, a tacit admission); such silence, therefore, is "insolubly ambiguous." *Id.* at 617, 96 S.Ct. at 2244. Following *Doyle*, the High Court held that cross-examination of a testifying defendant as to post-arrest silence does not violate due process where the silence occurred prior to the issuance of *Miranda* warnings or similar assurances. *Fletcher v. Weir*, 455 U.S. 603, 607, 102 S.Ct. 1309, 1312, 71 L.Ed.2d 490 (1982). Soon thereafter, however, this Court rejected *Fletcher* as a matter of Pennsylvania constitutional law in *Turner, supra*, reasoning that under Article 1, § 9 of the Pennsylvania Constitution, "the existence of *Miranda* warnings, or their absence, [does not] affect . . . a person's legitimate expectation not to be penalized for exercising the right to remain silent." 454 A.2d at 540. Thus, *Turner* extended the temporal coverage of the *Doyle* restriction to the entire post-arrest period. *See also Commonwealth v. DiPietro*, 538 Pa. 382, 648 A.2d 777, 779 (1994). Both this Court and the High Court, however, have determined that there is no violation of due process when pre-arrest, pre-*Miranda* silence is used at trial to impeach a

---

13. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

testifying defendant. *See Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980); *Bolus,* 545 Pa. 103, 680 A.2d 839.

 If the only remark at issue in this case was the prosecutor's reference in summation to appellee "never" telling authorities he was defending himself, the question of arguable merit might be close. Notwithstanding that the prosecutor uttered the open-ended word "never," the context surrounding that remark made clear that the prosecutor was focusing on appellee's conduct on the night of the killing, and why that conduct (specifically, appellee's threat to his brother, his flight, and his failure to stay and tell police that he was defending himself when he shot his brother) belied his trial claim of self-defense. Moreover, the prosecutor argued that the reason appellee did not tell police he was defending himself from his brother's assault was because he fled; that flight was, by definition, pre-arrest. Given this context, and the legitimate point actually being made, it would be difficult to say that counsel was constitutionally obliged to object to this single remark in closing.

However, under this Court's precedent in cases such as *Turner* and *Clark,* the disputed questions posed during the prosecutor's cross-examination of appellee arguably were subject to objection. First, we reject the notion that the prosecutor's questions were confined to appellee's flight; the prosecutor specifically asked appellee, "did you **ever** tell the police you were defending yourself?," and appellee responded by countering that police had not questioned him. Second, although the primary thrust of the cross-examination focused upon the period during which appellee was in flight, the prosecutor's disputed questions were broader; they were not confined either explicitly, or by context, to the pre-arrest period; and in point of fact they elicited testimony from appellee which specifically concerned his interactions with police after his arrest. Accordingly, at least as to the cross-examination of appellee, there were grounds for counsel to object to this questioning. Therefore, the Superior Court did not err in finding that the claim possesses arguable merit.

The Superior Court's summary resolution of the succeeding questions of reasonable basis and prejudice, however, are more troubling. In recent years, this Court has expressed a distinct preference for a hearing on counsel's strategy before venturing to hold that counsel lacked a reasonable basis for his or her actions or inactions. *See, e.g., Gribble,* 863 A.2d at 473–74 (error for PCRA court to hold counsel ineffective in permitting client to waive penalty phase jury without first holding evidentiary hearing); *Commonwealth v. Hughes,* 865 A.2d 761, 799 (Pa.2004) (although there did not appear to be a reason for counsel's failure to pursue claim of arguable merit, since there had been no hearing, "we cannot discern whether a reasonable basis existed for counsel's omission. In such circumstance, this Court has declined to divine, in the first instance on appellate review, whether counsel's actions were reasonably based") (citing *Commonwealth v. Duffey,* 855 A.2d 764, 775 (Pa.2004)). *Duffey* is particularly notable because the claim of counsel ineffectiveness there, as here, sounded in a failure to object to a reference to post-arrest silence.[14] Although this Court found that the claim had arguable merit and that the objectionable reference was prejudicial, we remanded for a determination of a reasonable basis, noting that in the absence of testimony from counsel, the court "should refrain from gleaning whether ... a reasonable basis exists." *Id.* (citing *Commonwealth v. McGill,* 574 Pa. 574, 832 A.2d 1014, 1022 (2003)) (court should resolve question of reasonable basis for counsel's actions in absence of evidentiary hearing only when answer is clear from record). Accord *Commonwealth v. Turner,* 469 Pa. 319, 365 A.2d 847, 849 (1976).

In the case *sub judice,* it cannot be said as a matter of law that counsel lacked a reasonable basis for failing to object to the prosecutor's temporal references on cross-examination. Review of the reasonableness of counsel's trial performance is not measured by an exercise in "spot the objection," as might occur in a law school evidence examination. Counsel are not constitutionally required to forward any and all possible objections at trial, and the decision of when to interrupt oftentimes

14. The reference in *Duffey* was at the penalty phase of a capital trial.

is a function of overall defense strategy being brought to bear upon issues which arise unexpectedly at trial and require split-second decision-making by counsel. The fact that an appellate court, reviewing a cold trial record, cannot prognosticate a reasonable basis for a particular failure to raise a plausible objection does not necessarily prove that an objectively reasonable basis was lacking. Objections sometimes highlight the issue for the jury, and curative instructions always do. Particularly in a case such as this, where the general line of questioning concerning flight and post-incident behavior was legitimate to rebut the justification defense, and only the proper temporal bound was crossed, counsel could believe that it was better not to call attention to the temporal limitation and to let his client explain himself. *See Commonwealth v. Whitney*, 550 Pa. 618, 708 A.2d 471, 478 (1998). It may be that counsel believed that his client acquitted himself well in his response. In this regard, it is worth noting that the actual evidence which resulted from this examination did not reveal that appellee stood silent in the face of a police accusation, thereby tacitly admitting guilt; instead, it revealed that police did not even attempt to question appellee, but instead put guns in his face and threatened him, according to appellee.

Furthermore, if counsel did not desire to call attention to the prosecutor's temporal reference by requesting a curative charge, there may well be tactical considerations which weighed in favor of counsel's deciding to proceed with this jury, rather than request the greater relief of a mistrial, as occurred in *Turner*. This was a case where the success of the justification defense depended in large part upon the jury's response to appellee's testimony, and counsel no doubt had some sense of whether this was a favorable or an unfavorable jury for appellee in light of that reality. In short, counsel may have deemed it better both to avoid drawing attention to the issue and to stay with this jury to verdict.

The deference to trial counsel that is required under *Strickland* and *Pierce* is a deference that arises from an appreciation of the art involved in the practice of law generally, and in the defense function particularly. This is not to say that there

is no instance where the failure to object could be deemed unreasonable as a matter of law. But, such is the exception and not the rule; at least as a general principle, counsel should have a chance to be heard before being declared ineffective. Absent a hearing at which counsel's actual reasons for failing to object may be explored, this is not a case where it can be said, as a matter of law, that there cannot have been a reasonable basis for failing to object.

A reasonable basis hearing would be unnecessary, however, if it could be determined that there is no reasonable probability that an objection at trial would have led to a more favorable outcome for appellee. Absent a showing of such prejudice, the claim of ineffective assistance fails. *E.g., Bethea,* 828 A.2d at 1076 (remand for reasonable basis hearing unnecessary where it is clear that appellee failed to show prejudice). *Accord Commonwealth v. DiNicola,* 866 A.2d 329, 336 (Pa.2005); *Gribble,* 863 A.2d at 460–61. The Superior Court did not deem the prosecutor's references in this case to be prejudicial based upon an analysis of the nature of the references as measured against the strength of the prosecution's case at trial. Instead, the panel applied what amounted to a presumption of prejudice, deeming it simply sufficient to say that references to post-arrest silence are "innately prejudicial" under *Turner* and *Clark,* and thus, the prejudice here was "obvious" since "the jury may have impermissibly concluded that [appellee's] exercise of his right to remain silent was an implicit admission of guilt." Slip op. at 11. To the extent the panel believed that prejudice in this instance is subject to proof simply by presumption, it clearly erred.

As this Court has recently emphasized, "the mere revelation of silence does not establish innate prejudice." *DiNicola,* 866 A.2d at 336–37 (citing *Whitney,* 708 A.2d at 478) ("Even an explicit reference to silence is not reversible error where it occurs in a context not likely to suggest to the jury that silence is the equivalent of a tacit admission of guilt."). Moreover, this Court has made clear that improper references to post-arrest silence are subject to harmless error analysis in

the direct appeal context, where an objection to the reference has been preserved. *Commonwealth v. Mitchell,* 576 Pa. 258, 839 A.2d 202, 214–15 (2003) (finding improper prosecutorial reference to post-arrest silence to be harmless given uncontradicted evidence of guilt); *Turner,* 454 A.2d at 540. More importantly, the test for prejudice in the ineffectiveness context is more exacting than the test for harmless error, and the burden of proof is on the defendant, not the Commonwealth. *See Gribble,* 863 A.2d at 472 (citing *Commonwealth v. Howard,* 538 Pa. 86, 645 A.2d 1300, 1307 (1994)). *Accord Commonwealth v. Williams,* 566 Pa. 553, 782 A.2d 517, 524–25 (2001). Certainly, if no *per se* rule attends the harmless error analysis applicable to a preserved *Doyle/Turner* claim upon direct review, a similar presumption cannot control the stricter prejudice inquiry in the context of a collateral attack alleging ineffective assistance of counsel. Notably, the U.S. Supreme Court very recently reemphasized that it is only in the rarest of circumstances—none of which are presented here—that a presumption of prejudice is appropriate in assessing a claim of ineffective assistance of counsel. *Florida v. Nixon,* 543 U.S. 175, ——, ——, 125 S.Ct. 551, 555, 562, 160 L.Ed.2d 565 (2004) (presumption of prejudice "is reserved for cases in which counsel fails meaningfully to oppose the prosecution's case") (citing *United States v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984)). *See also Bell v. Cone,* 535 U.S. 685, 696–97, 122 S.Ct. 1843, 1851, 152 L.Ed.2d 914 (2002) (for *Cronic's* presumed prejudice standard to apply, counsel's "failure must be complete").

 In point of fact, this Court has applied the *Strickland* ineffectiveness measurement for assessing prejudice in reviewing claims of counsel ineffectiveness relating to the introduction of references to the defendant's silence, weighing the precise nature of the reference against the strength of the evidence on the point at issue. *DiNicola,* 866 A.2d at 336–37 (pre-arrest silence case; applying reasonable probability that outcome would be different test, and analyzing prejudicial effect of counsel opening door to evidence in light of "circumspect" nature of reference, which was not "likely to burden

Appellee's Fifth Amendment right or to create an inference of an admission of guilt"); *Duffey*, 855 A.2d at 775 (post-arrest silence case involving penalty phase of capital trial; applying reasonable probability that outcome would be different test, and finding reference prejudicial); *Whitney*, 708 A.2d at 478 (post-arrest silence case; applying different outcome test; finding no prejudice in instance where counsel failed to object to reference to post-arrest silence, given strength of Commonwealth's case and appellant's failure to show "that the challenged testimony equated his post-arrest silence with guilt").[15] Thus, an actual showing of prejudice is required to prove counsel ineffective for defaulting on a *Doyle/Turner* claim; the presumption of prejudice employed below by the Superior Court cannot suffice.[16]

**15.** These cases are consistent with *Strickland's* emphasis that the prejudice inquiry requires consideration of "the totality of the evidence before the judge or jury" on the question at issue. 466 U.S. at 695, 104 S.Ct. at 2069. *Accord Buehl v. Vaughn*, 166 F.3d 163, 172 (3d Cir. 1999), *cert. dismissed*, 527 U.S. 1050, 119 S.Ct. 2418, 144 L.Ed.2d 815 (1999) (court cannot determine *Strickland* prejudice "without considering the strength of the evidence against the accused;" "every other circuit has also recognized that, in analyzing *Strickland's* prejudice prong, a court must consider the magnitude of the evidence against the defendant."). Notably, the lower federal courts, like this Court, have applied the *Strickland* test for prejudice in analyzing claims of ineffectiveness arising from a failure to object to an alleged improper reference to post-arrest silence. *See Hook v. Iowa*, 307 F.3d 756, 758 (8th Cir.2002), *cert. denied*, 538 U.S. 929, 123 S.Ct. 1586, 155 L.Ed.2d 324 (2003) (given strength of evidence, no *Strickland* prejudice when counsel failed to object to admission of testimony that appellant had exercised right to remain silent after being read *Miranda* rights, so court did not reach question of whether counsel's performance was deficient); *Pitts v. Anderson*, 122 F.3d 275 (5th Cir.1997) (analyzing ineffective assistance of counsel claim under *Strickland* and concluding that prosecutor's questions, used to impeach defendant with post-arrest silence, did not violate *Doyle*, so court did not reach question of prejudice); *Stokes v. Procunier*, 744 F.2d 475, 483 (5th Cir.1984) (assuming that counsel's failure to object to questions and comments on defendant's silence violated *Doyle*, there was no prejudice under *Strickland* given strength of evidence).

**16.** This author has recently noted that, to the extent that a case such as *Clark*—which predated this Court's decision in *Howard* recognizing the distinct showing required to prove prejudice in the context of an ineffective assistance of counsel claim—suggests a lesser standard for assessing prejudice, it is no longer good law. *Duffey*, 855 A.2d at 781–82 (Castille, J., joined by Eakin, J., concurring and dissenting).

Viewing the prejudice question under the appropriate standard, it is notable, first, that the evidentiary result of the prosecutor's exchange with appellee did not reveal that appellee was silent in the face of a post-arrest police accusation, thereby implying a tacit admission of guilt; but instead, appellee testified that police did not even attempt to question him and, indeed, threatened him.[17] As in *Whitney*, there was no direct evidentiary linkage between appellee's post-arrest silence and an inference of guilt arising from that silence. *Accord DiNicola.* Moreover, the prosecutor did not argue in closing that appellee's post-arrest silence amounted to a tacit admission of guilt; instead, the prosecutor attributed appellee's failure to tell authorities he was acting in self-defense to the fact that he fled, and that flight necessarily was confined to the pre-arrest stage. Finally, the verdict in this case, though not the outright acquittal appellee sought, nevertheless was favorable, as the jury acquitted appellee on the more serious counts of first and third degree murder.

On the other hand, this is arguably a case where the prosecutor's references on cross-examination clearly encompassed the post-arrest period, and no less clearly elicited a response which concerned appellee's post-arrest interaction with police. In addition, the nature of the prosecutor's questions—if not appellee's answers and the ultimate argument in summation forwarded by the prosecutor—certainly suggested that appellee failed to offer his self-defense account to police after his arrest, despite an opportunity to do so. Finally, the outcome of the trial turned upon the plausibility of appellee's claim of justification which, if accepted in its entirety, would have warranted an acquittal.

■ Ultimately, we conclude that we need not and should not decide whether appellee was prejudiced by counsel's failure to object to the prosecutor's line of questioning on cross-

17. Superior Court's finding of "innate prejudice" arising because "the jury may have impermissibly concluded that [appellees] exercise of his right to remain silent was an implicit admission of guilt" is premised upon an inaccurate factual predicate. The jury heard no evidence that appellee exercised his right to remain silent.

examination. Given the procedural posture of this appeal where the Superior Court has reversed the trial court and the Commonwealth is the appellant, the question of prejudice, like the question of a reasonable basis for counsel's inaction, was not passed upon by the trial court. We believe that the question is better determined by the trial court in the first instance following an evidentiary hearing. Given the nature of the defense forwarded in this case, and the partially-favorable jury verdict, any assessment of prejudice may necessarily be affected by counsel's disclosures concerning his trial strategy, including his assessment of the prospects for success in the defense pursued. *See Hughes*, 865 A.2d at 799 (noting that "the absence of a hearing and fact finding affects our ability to assess prejudice" and holding that, "as the matter must be remanded for a hearing concerning the existence of a reasonable basis for counsel's actions, it is preferable that any assessment of prejudice be made, in the first instance, by a fact finder").

The question of appropriate mandate remains. This Court's decision in *Grant*, which generally requires deferral of ineffectiveness claims to PCRA review, was made retroactively applicable to cases then pending on appeal, and this appeal was still pending in the appellate courts when *Grant* was decided. Although the Superior Court did not err in reaching the merits of the collateral claim when it did, since its disposition was entered before *Grant* was decided, we have now determined that the existing record cannot support the Superior Court's holding that trial counsel was ineffective and that a new trial is required. Nor do we believe, on the existing record, that the claim should be rejected on the merits. Accordingly, the appeal is now properly subject to disposition pursuant to *Grant*.

Our review in this matter has confirmed the wisdom of the decision in *Grant* concerning the presumptively appropriate forum for claims of ineffective assistance of counsel. The primary concern powering *Grant's* reconsideration of the *Hubbard* rule was the realization that entertaining claims of counsel ineffectiveness raised for the first time on appeal

forces an appellate court to engage in tasks unsuited to the appellate function, and which an appellate court ordinarily would avoid:

Appellate courts in Pennsylvania routinely decline to entertain issues raised on appeal for the first time. Indeed, the Pennsylvania Appellate Rules of Procedure specifically proscribe such review. *See* Pa.R.A.P. 302(a). The Rules and case law indicate that such a prohibition is preferred because the absence of a trial court opinion can pose a substantial impediment to meaningful and effective appellate review. *See, e.g., Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306, 308 (1998). Further, appellate courts normally do not consider matters outside the record or matters that involve a consideration of facts not in evidence. *Commonwealth v. Rios,* 546 Pa. 271, 684 A.2d 1025, 1036 n. 11 (1996). Most importantly, appellate courts do not act as fact finders, since to do so would require an assessment of the credibility of the testimony and that is clearly not our function. *See, e.g., Commonwealth v. Pierce,* 537 Pa. 514, 645 A.2d 189, 198 (1994); *Commonwealth v. Griffin,* 511 Pa. 553, 515 A.2d 865, 869 (1986).

Yet, in the arena of ineffectiveness claims, appellate courts are routinely called upon to perform each of these tasks. In ruling on an ineffectiveness claim, it is rare that a trial court opinion exists which will aid the appellate court in examining the claim. Appellate courts are frequently called upon to consider matters outside the record. Moreover, appellate courts often engage in some fact finding by being required to speculate as to the trial strategy of trial counsel in order to rule upon these claims. It seems anomalous that where the issues involve claims of ineffectiveness, we employ the exact opposite appellate review process that we require in almost all other appeals.

813 A.2d at 733–34.

The record in this case contains no evidentiary hearing involving testimony from trial counsel, or relevant factual findings at the trial court level. But, that is not to say that, if given an opportunity to develop his collateral claim, appellee

will be unable to sustain it. As *Grant* establishes, the preferred forum in which to pursue such a claim is via the PCRA. Accordingly, we will dismiss this claim without prejudice to appellee's right to pursue it under the PCRA. *See, e.g., Commonwealth v. Overby,* 575 Pa. 227, 836 A.2d 20, 22–23 (2003), *cert. denied,* —— U.S. ——, 124 S.Ct. 2838, 159 L.Ed.2d 270 (2004); *Commonwealth v. Belak,* 573 Pa. 414, 825 A.2d 1252, 1255 (2003). In resolving any such claim, the PCRA court should look to this Court's opinion for guidance and must, of course, defer to our conclusion respecting arguable merit.

We turn now to appellee's cross-appeal. Appellee contends that the Superior Court erred in failing to address four additional claims of trial counsel ineffectiveness which he raised for the first time on appeal.[18] In appellee's view, counsel's alleged mistakes are bound to be repeated at the retrial ordered by the Superior Court, and thus, the panel should have addressed all of the claims. Appellee goes on to brief the merits of the ineffectiveness claims at some length.

We conclude that the Superior Court committed no error in this regard. It is not a likely conclusion, much less a foregone one, that the same allegedly objectionable circumstances will occur at a new trial, as at a previous trial, much less that new counsel will commit the same alleged responsive errors as former counsel. In any event, this Court has determined that the Superior Court erred in granting a new trial upon the current state of the record, thus removing the factual predicate for appellee's complaint. What is significant, for purposes of fashioning the appropriate mandate in this case, is that the substantive claims appellee faults the Superior Court for having failed to reach, and which he would now have this Court reach, all sound in the ineffective assistance of counsel. Consistently with the analysis we have set forth above, the

18. Appellee alleges that trial counsel was ineffective in: (1) failing to object to the trial court's improper jury instruction regarding justification issues; (2) failing to object to the improper joining of the charge of former convict not to own a firearm; (3) failing to object to the Commonwealth's improper use of police reports; and (4) failing to object to the improper admission of other-crimes evidence.

appropriate disposition of these collateral claims under *Grant* is dismissal without prejudice to appellee's right to pursue them under the PCRA.

For the foregoing reasons, we reverse the Superior Court's grant of a new trial, reinstate appellee's judgment of sentence, and dismiss appellee's claims of ineffective assistance of counsel without prejudice to appellee's right to pursue those collateral claims under the PCRA. Jurisdiction is relinquished.

Former Justice LAMB did not participate in the decision of this case.