J-S13039-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| ZAHIR BODDY-JOHNSON | |
| Appellant | No. 3029 EDA 2015 |

Appeal from the PCRA Order September 17, 2015
in the Court of Common Pleas of Philadelphia County Criminal Division
at No(s): CP-51-CR-0004485-2008

BEFORE: BENDER, LAZARUS, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED MARCH 20, 2017**

Appellant, Zahir Boddy-Johnson, appeals from the order entered in the Philadelphia County Court of Common Pleas denying his petition for relief filed pursuant to the Post Conviction Relief Act[1] ("PCRA"). Appellant contends trial counsel was ineffective for failing to request a jury instruction explaining the purpose for which they were to consider evidence of other crimes. We affirm.

We adopt the facts as set forth by the trial court and relied upon by this Court on direct appeal.

> On February 17, 2008 Philadelphia Housing Authority Police Officer Craig Kelley was on duty monitoring the entrance to the public housing residence located at 301 Queen Lane, Philadelphia, PA when he heard a knock on the steel door leading into the patrol booth where he was

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

stationed situated in the lobby area of the residence. Officer Kelley testified that when he opened the door to the patrol booth he found a male wearing a scarf partially covering his face standing in front of him with the muzzle of a rifle pointed at his face. The male's finger was on the trigger of the rifle and the male stated "Don't move." The assailant then began shooting Officer Kell[e]y, whereupon Kell[e]y closed the door to the booth and he was spun around by the rifle fire and knocked to the floor. The male continued to fire his weapon at Kell[e]y while he lay on the floor beneath the window at his duty station as glass and debris sprayed over him. Rifle bullets penetrated his protective vest and struck Kell[e]y's left torso.

In spite of his injuries, Officer Kelley was able to access his radio and relay that he was down, needed assistance, and required a medic. Kell[e]y was unable to get a response however he was then able to get to a nearby telephone and he called the Housing Authority radio room for help. Philadelphia police officers responded shortly thereafter and Kell[e]y was immediately transported to Temple University Hospital.

Dr. Amy Goldberg testified that she was called to attend to Officer Kell[e]y at Temple University Hospital and that she found him with a large wound to the left side of his chest and abdomen. Kell[e]y was treated and admitted to the hospital where he remained for three days. Upon his release from the hospital, Kell[e]y was prescribed pain medication and was further treated at Temple Wound Clinic and required the services of a home care nurse three times a week for approximately two months. He continues to receive physical therapy and continues on pain medicines.[2]

Philadelphia Police Officer Robert Lee responded to the police radio call that Officer Kelley had been shot. Lee began patrolling the area near the crime scene whereupon Appellant was observed wearing clothing that fit the description relayed over the radio. Appellant was stopped and [sic] Appellant where he was coming from. Appellant

_____

[2] We note that the trial court's opinion is dated April 30, 2010.

responded that he was coming from 301 Queen Lane where his aunt lived. Lee testified that his next question to Appellant was whether Appellant knew that a police officer had been shot, whereupon Appellant responded, "No, I did not know a police officer had got shot a[t] 301 Queen Lane, but I heard the gunshots." Lee had not identified the location of the shooting of Officer Kell[e]y before Appellant's response. Lee advised police radio that he had a potential suspect and he was then instructed to transport Appellant to Temple University Hospital. Upon arriving at the hospital, Lee was able to meet with Officer Kelley to attempt to make an identification and was further instructed to transport Appellant to the homicide unit at police headquarters.

Detective George Pirrone arrived at the scene shortly after the shooting and determined that video surveillance had been taken of the area from a camera at the Hung Hing Restaurant located a block away. The video, which was introduced into evidence, revealed a male running past the restaurant carrying a rifle in his right hand while bystanders entered the restaurant and hid behind a counter.

In the area of Appellant's arrest, and near the location shown in the video, an Erinco SK assault rifle, a black nylon bag containing live rounds of ammunition along with other contraband was recovered. A bank card found at the scene was traced to Appellant. Other ballistics and DNA evidence linked Appellant to the shooting of Officer Kell[e]y.

Shortly after Appellant was transported to police headquarters, Detective Patrick Mangold and Detective McNamee conducted an interview with him.[3] Appellant was first provided **Miranda**[4] warnings and he signed the standard form indicating that he had been read his rights,

---

[3] The trial court inadvertently indicates the date of the testimony as June 8, 2009. Detective Mangold testified on June 9, 2009.

[4] **Miranda v. Arizona**, 384 U.S. 436 (1966).

- 3 -

that he understood them, and that he was voluntarily offering his statement. Thereafter, Appellant admitted that he shot Officer Kelley, giving a detailed explanation. Appellant signed the statement at the end of the interview.[5]   Detective Mangold testified that after the

---

[5] Appellant moved to suppress his statement to Detective Mangold. The following sidebar discussion was held regarding the statement:

[Defense counsel]: Your Honor, the portion where it refers to restitution—

[Appellant] states "Pay restitution for my stolen car case," Your Honor, I would just submit that, obviously, this would be something that would be a prior bad act. For that to be brought in, the Commonwealth would have to make that known to the [c]ourt and make it known to me in writing prior to it actually being offered. That being said, it hasn't been. There has been nothing to indicate that a Motion was filed to bring in that prior bad act. That being said, I would just ask that one portion to be redacted.

The Court: Commonwealth?

[The Commonwealth]: Your Honor, I would submit to the [c]ourt that this goes to the essence of [Appellant's] motive. And as it stands, there can be a curative instruction as to that, as in any case where a defendant's involvement in another crime comes out.

This is a case where [Appellant] is charged with attempted murder and aggravated assault. Him saying that he had a prior car case is certainly not going to make the jury believe that because he had a car case, he is somehow guilty, or should be seen as someone who would be more likely to commit an aggravated assault. What it does is—

What he says is, "I needed to get money for restitution for my stolen car case."

- 4 -

interview was completed, Appellant's aunt, Miriam Davis, arrived and came into the interview room and that she read over the statement with Appellant and then she also signed if [sic] Appellant's statement.

The defense offered evidence of Appellant['s] reputation for being peaceful, truthful, and law-abiding. The defense also offered testimony that the glass enclosure of Kelley's patrol booth had been previously damaged with bullet holes from prior occasions.

*Boddy-Johnson*, 2910 EDA 2009 (unpublished memorandum adopting Trial Ct. Op., 4/30/10, at 2-4) (references to the record omitted).

At trial, Detective Mangold testified, in pertinent part, as follows, reading from Appellant's statement:

Question: Were you present when Officer Kelley was shot tonight while he was working inside of the security booth at 301 Queen Lane?

A: Yes.

Q: Can you tell me who shot him?

Answer: I did.

Question: Can you tell me why you shot him?

_____

N.T., 6/9/09, at 43-44. The court denied defense counsel's motion. On direct appeal, Appellant argued he was entitled to a new trial as a result of the denial of the motion to suppress his statement or to redact from his statement his reference to an unrelated stolen car case. ***See Commonwealth v. Boddy-Johnson***, 2910 EDA 2009 (unpublished memorandum at 2) (Pa. Super. Sept. 29, 2010). This Court opined: The "portion of Appellant's statement referencing Appellant's need for money to make restitution in separate stolen vehicle case was relevant to show motive[.]" ***Id.*** at 3.

Answer: I was going to rob him. When he opened the door to the booth, I shot the gun one time and he closed the door. Then I shot two more times while he was inside of the booth. I was shooting through the glass, but I don't—

The bullets went through. I was just shooting.

Question: Can you explain to me exactly what happened?

Answer: I went to the door of the booth and I knocked on the door. As soon as he opened the door, I pointed the gun at him. After I pointed the gun at him, he tried to close the door and that is when I shot. The gun went off.

Page three, continued.

He got the door closed and I just shot at the booth because I thought he was going to shoot at me.

[Defense counsel]: Your Honor, I ask him to finish the whole statement.

[The Commonwealth]: He said he got the door closed. And what did he say after that?

A: And I just shot at the booth because I thought he was going to shoot at me. I ran out of the building and onto Queen Lane. I dropped the bag that I had the gun in on Queen Lane. I kept on moving and I dropped the gun at the corner of the next block, I think at Morris and Queen. I went up the block and I just tried to chill. Then while I was still on the block, the cops stopped me and brought me here.

*    *    *

Question: When you told me that you were going to rob the officer, what were you going to take form him?

Answer: I was going to take the laptop that was in there, and I was going to try to take his gun.

Question: What were you going to do with the things that you took from the officer?

Answer: I was going to sell them and spend the money for restitution for my stolen car case.

Question: When did you decide to do this?

Answer: I saw him in there last Sunday, but I really didn't think about it. Then today I saw him again and I just decided to do it.

Question: What kind of gun did you have today and how long have you had it?

Answer: It's an SKS, a rifle. I had it about a month.

* * *

Question: Do you know the officer that was shot today?

Answer: No, I don't.

N.T., 6/9/09, at 55-59.

On June 12, 2009, following a jury trial, Appellant was found guilty of attempted murder, aggravated assault, weapons and related charges. On September 15, 2009, he was sentenced to twenty-three and one-half to forty-seven years' imprisonment. On September 18, 2009, his sentence for voluntary use of a firearm was amended to two and one-half to five years' imprisonment, for an aggregate sentence of twenty-two and one-half to forty-seven years' imprisonment. Appellant's judgment of sentence was affirmed by this Court. **See id.** On October 14, 2010, Appellant filed a petition for allowance of appeal. The Pennsylvania Supreme Court denied the petition on February 8, 2011.

Appellant filed a *pro se* PCRA petition on April 17, 2012.[6]  Counsel was appointed and filed an amended PCRA petition on April 17, 2015.  On September 17, 2015, the PCRA petition was dismissed without a hearing.  This timely appeal followed.[7]  Appellant filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal.[8]  The PCRA court filed a responsive opinion.

---

[6] Appellant's judgment of sentence became final on May 9, 2011, ninety days after the Pennsylvania Supreme Court denied his petition for allowance of appeal.  **See** 42 Pa.C.S. § 9545(b)(3) (providing "a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review[ ]").  Appellant had until May 9, 2012, to file his PCRA petition.  **See** 42 Pa.C.S. § 9545(b)(1) (providing PCRA petition must be filed within one year of the date the judgment becomes final).  His *pro se* PCRA petition was was docketed on April 17, 2012.  Therefore, it was timely.

[7] The notice of appeal was filed by Gary Sanford Server, Esq.  The Pa.R.A.P. 1925(b) statement of errors complained of on appeal was filed by Lawrence J. Bozzelli, Esq.  On June 29, 2016, this Court entered a *per curiam* order remanding the case to the trial court for a determination as to which court appointed attorney, Gary Sanford Server, Esq., or Lawrence J. Bozzelli, Esq., represented Appellant.  On August 30, 2016, the trial court entered an order allowing Lawrence Bozzelli, Esq. to withdraw from the instant case.  Present counsel filed the amended PCRA petition.

[8] We note that Appellant suggests that the Commonwealth may argue the issue raised in this appeal is waived because it was not in the Rule 1925(b) statement filed by Mr. Bozzelli.  Appellants Brief at 17.  In the Rule 1925(b) statement, it is averred "[t]he trial court committed error when it permitted the Commonwealth to introduce evidence of [A]ppellant's prior bad act as well as reading a related jury charge to the jury."  Appellant's 1925(b) Statement, 2/12/16, at 1.  Appellant refers to the notes of testimony where defense counsel asks the trial court if it intends to give a judgment instruction for prior bad acts.  **See** N.T., 6/10/09, at 8.  The trial court responded as follows: "My law clerk is going to pull the chart.  I will go

Appellant raises the following issue for our review: "Was trial counsel ineffective where they [sic] failed to request a jury instruction explaining to the jury the purpose for which they were to consider evidence of other crimes?"[9]  Appellant's Brief at 6.  Appellant contends that "[t]rial counsel had no reasonable basis for not . . . requesting an appropriate instruction during the Court's closing charge."  *Id.* at 15.  He argues that "[a]ppellate courts have previously held that when bad acts evidence is admitted at trial an instruction is necessary to explain the limited purpose for which the evidence was admitted[.]"  *Id.*   He asserts Appellant was prejudiced by counsel's failure to request the instruction.  *Id.* at 16.

Our standard of review from the denial of relief under the PCRA is well-settled:

> [A]n appellate court reviews the PCRA court's findings to
> see if they are supported by the record and free from legal

---

through it and I will talk to Counsel about it later . . . ."  *Id.* Prior to charging the jury, the issue of a curative instruction regarding prior bad acts was raised.  *See infra*.  Rule 1925(b) provides, in pertinent part, that "[e]ach error identified in the Statement will be deemed to include every subsidiary issue contained therein which was raised in the trial court." Pa.R.A.P. 1925(b)(iv)(5).  *See also Commonwealth v. Laboy*, 936 A.2d 1058, 1059-60 (Pa. 2007) (holding Superior Court erred in finding vague Rule 1925(b) sufficiency of the evidence claim waived in straight forward drug case where trial court addressed issue).  The Commonwealth did not argue that the issue was waived.

[9] Appellant's Rule 1925(b) statement also contains issues that are not raised on appeal.  *See Gurley v. Janssen Pharm., Inc.*, 113 A.3d 283, 288 n. 11 (Pa. Super. 2015) (issues raised in Rule 1925(b) and not addressed in the statement of questions or body of brief held abandoned on appeal).

error. This Court's scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party.

***Commonwealth v. Fahy***, 959 A.2d 312, 316 (Pa. 2008) (quotation marks and citations omitted).

To be eligible for PCRA relief, [a]ppellant must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found at 42 Pa.C.S. § 9543(a)(2) (listing, *inter alia*, the ineffective assistance of counsel and the unavailability at the time of trial of exculpatory evidence, which would have changed the outcome of the trial had it been introduced). Further, [a]ppellant must demonstrate that the issues raised in his PCRA petition have not been previously litigated or waived. ***Id.*** § 9543(a)(3). . . . A PCRA claim is waived "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post[-]conviction proceeding." ***Id.*** § 9544(b). . . .

It is well-established that counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. ***Strickland v. Washington***, [ ] 104 S. Ct. 2052, [ ] (1984). This Court has characterized the ***Strickland*** standard as tripartite, by dividing the performance element into two distinct parts. ***Commonwealth v. Pierce***, [ ] 527 A.2d 973, 975 ([Pa.] 1987). Thus, to prove counsel ineffective, [a]ppellant must demonstrate that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) [a]ppellant was prejudiced by counsel's act or omission. ***Id.*** at 975.

Relating to the reasonable basis prong, "[g]enerally, where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." Courts should not deem counsel's strategy or tactic unreasonable

"unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." ***Id.*** Also "[a]s a general rule, a lawyer should not be held ineffective without first having an opportunity to address the accusation in some fashion. . . . The ultimate focus of an ineffectiveness inquiry is always upon counsel, and not upon an alleged deficiency in the abstract."

Relating to the prejudice prong of the ineffectiveness test, the PCRA petitioner must demonstrate "that there is a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been different." Particularly relevant herein, it is well-settled that "a court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the ***Strickland*** test, the court may proceed to that element first."

***Commonwealth v. Koehler***, 36 A.3d 121, 131-32 (Pa. 2012) (some citations omitted).[10]

---

[10] Appellant cites ***Commonwealth v. Buehl***, 658 A.2d 771 (Pa. 1985) in support of the claim that counsel was ineffective in the instant case. In ***Commonwealth ex rel. Dadario v. Goldberg***, 773 A.2d 126 (Pa. 2001), the Pennsylvania Supreme Court opined:

this Court has retreated from the view expressed in ***Commonwealth v. Buehl*** . . . that Section 9543(a)(2)(ii) of the PCRA places a higher burden on a petitioner to show ineffective assistance of counsel than that required by the Sixth Amendment as defined by ***Strickland v. Washington***, [ ] 104 S.Ct. 2052, [ ] (1984). In ***Commonwealth v. Kimball***, [ ] 724 A.2d 326 ([Pa.] 1999), we disapproved of ***Buehl*** and held that Section 9543(a)(2)(ii) does not place a more stringent standard for collateral review of claims of ineffective assistance of counsel than the Sixth Amendment standard applicable to ineffectiveness claims raised on direct appeal. We interpreted the language from Section 9543(a)(2)(ii)

In reviewing the propriety of an order denying PCRA relief, this Court is limited to examining whether the evidence of record supports the determination of the PCRA court, and whether the ruling is free of legal error. Great deference is given to the findings of the PCRA court, which may be disturbed only when they have no support in the certified record.

*Commonwealth v. Perry*, 959 A.2d 932, 934-35 (Pa. Super. 2008) (citations omitted).

In *Commonwealth v. Spotz*, 870 A.2d 822 (Pa. 2005), our Pennsylvania Supreme Court opined: "Objections sometimes highlight the issue for the jury, and curative instructions always do." *Id.* at 832; *accord Commonwealth v. Washington*, 927 A.2d 586, 606 (Pa. 2007).

In the case *sub judice*, the trial court opined:

[T]he [c]ourt offered Appellant the opportunity to have the jury instructed that it could not consider his prior conviction as evidence of his guilt. After conferring with

---

requiring proof that counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place" as embodying the prejudice element of the Sixth Amendment standard for ineffectiveness claims articulated in *Strickland*. Accordingly, we held that the standard of review, pursuant to Section 9543(a)(2)(ii), of an ineffectiveness claim raised in a PCRA petition is the *Strickland* standard, as followed by this Court in *Commonwealth v. Pierce*, [ ] 527 A.2d 973 ([Pa.] 1987). *See Kimball*, 724 A.2d at 333.

*Id.* at 129 (footnote omitted).

counsel, Appellant declined to request the jury instruction. . . . There was a reasonable basis for declining to request a cautionary instruction regarding his prior conviction. Such an instruction would serve only to highlight what was otherwise minimally significant evidence. Moreover, Appellant failed to plead and prove that any prejudice redounded to his detriment from counsel's decision not to request a cautionary instruction. Appellant's claim of ineffective assistance is without merit and error was not committed.

Trial Ct. Op., 3/4/16, at 6 (emphasis added). We agree no relief is due.

The court recessed the jury and stated as follows:

The Court: Counsel, basically what I am **going to read is**: There was evidence tending to prove that the defendant has a prior criminal matter involving car theft. That was referenced in defendant's statement to police. This evidence is not evidence of the defendant's guilt and you must not infer guilt from the evidence of a prior criminal matter. This evidence may be considered by you for **one purpose only**: That is, to help you judge whether or not there was potential for commission of the crime for which the defendant is currently on trial.

That's basically what I am going to read.

[Defense counsel]: Your Honor, I would just ask that it not be read in general, just in terms of confusion.

The Court: So you don't want the instruction at all?

[Defense counsel]: Your Honor, it's a situation where, once again, it's not a conviction. It's not something—

The Court: I understand. Do you want an instruction or you do not want an instruction, or we can cut it off?

There was evidence tending to prove that [Appellant] has a prior criminal matter involving car theft. That was referenced in [Appellant's] statement to police. This evidence is not evidence of [Appellant's] guilt and you

must not infer guilt from the evidence of a prior criminal matter.

Then the only purpose would be to help them assess motive. We could leave that part out or—

[Defense counsel]: Let me just confer with my client.

The Court: Yes. Go ahead.

[Defense counsel]: Thank you, Your Honor. Your Honor, I ask that it not be given.

The Court: Very well.

Commonwealth, you concur? You concur? They do not wish to have this instruction.

[The Commonwealth]: It's up to him. It's totally his decision.

The Court: Very well.

N.T., 6/10/09, at 26-28.

We discern no error by the PCRA court. Appellant has not satisfied the prejudice prong of the ineffective assistance of counsel test. **See Koehler**, 36 A.3d at 131-32. He has not shown that but for counsel's action the result of the proceedings would have been different. **See id.** The record supports the determination of the PCRA court. **See Perry**, 959 A.2d at 934-35. Therefore, his ineffective assistance of counsel claim is without merit. **See Koehler**, 36 A.3d at 131-32. Accordingly, we affirm the order of the PCRA court.

Order affirmed.

- 14 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/20/2017