J. S70008/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
   :    PENNSYLVANIA
v.    :
   :
ANTON JOHNSON,    :    No. 1778 EDA 2018
   :
Appellant    :

Appeal from the PCRA Order Entered May 23, 2018,
in the Court of Common Pleas of Delaware County
Criminal Division at No. CP-23-CR-0006415-2011

BEFORE: GANTMAN, P.J., McLAUGHLIN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED JANUARY 07, 2019**

Anton Johnson appeals from the May 23, 2018 order dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. For the following reasons, we affirm.

The PCRA court set forth the extensive factual history of this case in its August 3, 2018 opinion and we need not reiterate it here. (***See*** PCRA court opinion, 8/3/18 at 1-5, ¶¶ 1-144.) In sum, a jury found appellant guilty of one count of aggravated assault[1] after he attempted to strike Radnor Township Police Officer Steven Bannar with his vehicle during a traffic stop.

---

[1] 18 Pa.C.S.A. § 2702(a)(2). The record reflects that appellant was also charged with criminal attempt (homicide), recklessly endangering another person, and resisting arrest. Appellant was only tried on the assault and criminal attempt (homicide) charges; the remaining charges were withdrawn prior to trial. The jury acquitted appellant of the attempted homicide charge.

(Notes of testimony, 3/27/12 at 179, 183.) Following his convictions, the trial court sentenced appellant to 120 to 240 months' imprisonment. Appellant was represented by Jeffrey Bauer, Esq., prior to his jury trial and by Lacy Wheeler, Esq., during his jury trial.

On January 24, 2013, a panel of this court affirmed appellant's judgment of sentence, and our supreme court denied allowance of appeal on August 21, 2014. *Commonwealth v. Johnson*, 64 A.3d 287 (Pa.Super. 2013), *appeal denied*, 97 A.3d 743 (Pa. 2014). Appellant did not seek review with the United States Supreme Court. On January 29, 2015, appellant filed a *pro se* PCRA petition, and Stephen Molineux, Esq. ("PCRA counsel"), was appointed to represent him. On February 1, 2016, PCRA counsel filed an amended PCRA petition on appellant's behalf. The PCRA court ultimately conducted evidentiary hearings on appellant's amended petition on July 14 and August 10, 2017. Thereafter, on May 23, 2018, the PCRA court entered an order denying appellant's petition. This timely appeal followed on June 14, 2018. That same day, appellant filed a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b). The PCRA court filed its Rule 1925(a) opinion on August 3, 2018.

Appellant raises the following claims for our review:

> 1. Whether the PCRA Court erred in denying [a]ppellant's PCRA petition where the record showed that trial counsel was ineffective for

- 2 -

failing to file a motion to suppress the arrest for lack of probable cause?

2. Whether the PCRA Court erred in denying [a]ppellant's PCRA petition where the record clearly showed that trial counsel was ineffective in failing to seek a jury instruction regarding "justification" where the defense was that [a]ppellant was justified in moving his car because he was in fear for his life after the police opened fire on him?

3. Whether the PCRA Court erred in denying [a]ppellant's PCRA petition where the record clearly showed that trial counsel was ineffective for failing to object to inferences by Commonwealth witnesses that [a]ppellant was involved in criminal activity and was under investigation by the East Goshen Police?

4. Whether the PCRA Court erred in denying [a]ppellant's PCRA petition where the record clearly showed that trial counsel was ineffective in failing to properly advise [a]ppellant regarding the plea offer?

Appellant's brief at 5-6.

Proper appellate review of a PCRA court's dismissal of a PCRA petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa.Super. 2014) (citation omitted). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." *Commonwealth v. Hickman*, 799 A.2d 136, 140 (Pa.Super. 2002) (citation omitted). In order to be eligible for PCRA relief, a defendant must

- 3 -

plead and prove by a preponderance of the evidence that his conviction or sentence arose from one or more of the errors listed at 42 Pa.C.S.A. § 9543(a)(2). Further, these issues must be neither previously litigated nor waived. 42 Pa.C.S.A. § 9543(a)(3).

All of appellant's claims concern the effectiveness of his counsel. To prevail on a claim of ineffective assistance of counsel under the PCRA, a petitioner must establish the following three factors: "first[,] the underlying claim has arguable merit; second, that counsel had no reasonable basis for his action or inaction; and third, that Appellant was prejudiced." *Commonwealth v. Charleston*, 94 A.3d 1012, 1020 (Pa.Super. 2014) (citation omitted), *appeal denied*, 104 A.3d 523 (Pa. 2014).

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the [i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

*Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014) (internal quotation marks omitted; some brackets in original), citing 42 Pa.C.S.A. § 9543(a)(2)(ii).

"[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant." *Commonwealth v. Ousley*, 21 A.3d 1238, 1242 (Pa.Super. 2011) (citation omitted), *appeal denied*, 30 A.3d 487 (Pa. 2011). Additionally, counsel is not ineffective for

failing to raise a claim that is devoid of merit. ***Commonwealth v. Ligons***, 971 A.2d 1125, 1146 (Pa. 2009).

In the instant matter, the PCRA court authored a comprehensive, 29-page opinion wherein it concluded that appellant's claims of ineffective assistance of counsel were meritless and dismissed appellant's petition. (***See*** PCRA court opinion, 8/3/18, at 18-29.) We have reviewed the record in its entirety and have considered the merit of appellant's claims. Following our careful consideration of the record, the briefs of the parties, and the applicable case law, we find that the PCRA court's conclusions, as set forth on page 18 of the PCRA court's Rule 1925(a) opinion, are supported by competent evidence and are clearly free of legal error. We, therefore, adopt the well-reasoned, August 3, 2018 opinion of the Honorable John P. Capuzzi, Sr., as our own for purposes of further appellate review. Accordingly, we affirm the May 23, 2018 order of the PCRA court dismissing appellant's petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/7/19

Circulated 12/11/2018 04:08 PM

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA | NO. CP-23-CR-0006415-2011

v.

ANTON JOHNSON | Superior Court No. 3021 EDA 2018

William R. Toal, III, Esquire, Attorney for the Commonwealth
Stephen D. Molineux, Esquire, Attorney for the Appellant

## OPINION

Capuzzi, J.                                                              FILED: 8/2/18

Anton Johnson, hereinafter "Appellant or Petitioner", argues that he is entitled to relief from the denial of his Post-Conviction Relief Act Petition. Appellant's contentions are wholly without merit and the court's dismissal of the PCRA petition should be affirmed.

## FACTUAL HISTORY:

On October 14, 2011, members of the Delaware County Drug Task Force were investigating the Appellant for drug sales and possible involvement in a home invasion that resulted in a shooting. (N.T. 3/12/2012 pp. 6-7); (N.T. 3/27/2012 p. 313); *see also* Criminal Complaint. When police officers stopped Appellant's vehicle as he was driving from his home in Delaware County, Appellant accelerated his vehicle directly toward Radnor Township Police Officer Bannar. (N.T. 3/27/2012 pp. 179, 183). A jury found him guilty of aggravated assault on a police officer.

## FINDINGS OF FACT FROM THE PCRA HEARING:

1.    At the commencement of the PCRA evidentiary hearing, petitioner asserted that he was only pursuing issues regarding:

1

(a)    whether trial counsel was ineffective for failing to pursue a suppression motion;

(b)    whether trial counsel was ineffective for failing to pursue a jury instruction regarding justification;

(c)    whether trial counsel was ineffective for failing to object to alleged improper inferences which arose from the testimony of a Commonwealth witness regarding what the police were doing on Bullens Lane just prior to petitioner's arrest.

(d)    whether prior counsel was ineffective for failing to convey a plea offer from the Commonwealth and failing to pursue a plea offer from the Commonwealth.

(e)    All other issues raised or referenced in the amended PCRA petition or elsewhere were specifically withdrawn with petitioner's approval. (N.T. 7/14/17 pp. 3-9).

2.    On October 14, 2011, petitioner was at his house at 1746 Bullens Lane in Woodlyn, Ridley Township just before he was arrested. (N.T. 7/14/17 p.10).

3.    Petitioner, who works as a barber, finished cutting the hair of a customer named Cliff Mason at approximately 3:30-3:45 p.m. Petitioner then walked to his car, a Chevy Impala, intending to drive to work at a Senior Citizen Building at 11th & Edgemont Avenue in the City of Chester. (N.T. 7/14/17 pp. 10-11).

4.    After getting in his car and driving away from his home, petitioner stopped at a red light near Bullens Lane and MacDade Boulevard, where a marked Ridley Township police car pulled behind him. (N.T. 7/14/17 pp. 11-12).

5.    According to petitioner, he remained in the vehicle but pulled his car over to allow other vehicles to pass him. (N.T. 7/14/17 pp. 12-13).

6.    According to petitioner, an unmarked police SUV pulled in front of his vehicle and an officer got out of the SUV and stood in front of it. (N.T. 7/14/17 p. 14).

7.    According to petitioner, the officer in front of him was telling him not to move or he would shoot him. (N.T. 7/14/17 pp. 14-15).

8.    According to petitioner, the officer in front of him was Officer Bannar who had his weapon drawn at the time. (N.T. 7/14/17 p. 15).

9.    Meanwhile, according to petitioner, other officers to the left and right of his car were telling him to turn the car off and directing him to get out of the car. (N.T. 7/14/17 p. 15).

10.    According to petitioner, he kept his hands raised as officers yelled conflicting orders at him. (N.T. 7/14/17 pp. 15-16).

11.    According to petitioner, he told the officers that he had to put the car in park before he could turn it off. (N.T. 7/14/17 pp. 16).

12.    According to petitioner, as he put the car in park, the officer in front of him started shooting at him and petitioner then ducked down causing his foot to hit the gas and brake at the same time and causing the car to jerk. (N.T. 7/14/17 p. 16).

13.    According to petitioner, Officer Bannar began shooting at petitioner prior to the Chevy moving. (N.T. 7/14/17 p. 18).

14.    According to petitioner, after Officer Bannar shot at petitioner, other officers located behind petitioner fired shots too. (N.T. 7/14/17 pp. 18-19).

15.    According to petitioner, while the police where shooting at him, and he ducked down to avoid being shot, the car began to jerk forward to the right and he then steered it towards the parking lot of the Woodlyn Shopping Center. (N.T. 7/14/17 pp. 18-20).

16.    According to petitioner, he put the car into park after travelling about 50 yards and then put his hands out the window, so the officers would not shoot him. (N.T. 7/14/17 pp. 20-21).

17.    According to petitioner, the police then rammed into the car's driver's side door and the police had to pull him out from the passenger's side door before taking him to the Crozer Chester Medical Center. (N.T. 7/14/17 p. 21).

18.    Contrary to petitioner's PCRA hearing testimony, Officer Bannar did not shoot at petitioner prior to petitioner driving at him in an attempt to strike the officer. (N.T. 3/27/12, vol. I., p. 179).

19.    Petitioner initially did as he was told and put his hands above his head, however, as Officer Bannar approached petitioner, petitioner "accelerated his vehicle right towards me, at which time I jumped to the right and fired one round into his vehicle." (N.T. 3/27/12, vol. I, p. 179).

3

20. After just missing Officer Bannar, petitioner's vehicle made a hard-right turn and kept going past Officer Bannar's vehicle. (N.T. 3/27/12, vol. II, pp. 185-188).

21. Radnor Township Officer Jonathan Jagodinski, a 6-year police veteran, attempted to open petitioner's car door immediately before petitioner took off and drove at Officer Bannar. (N.T. 3/27/12, vol. II, pp. 318-319).

22. Officer Jagodinski saw petitioner put his hands down and accelerate his vehicle straight towards Officer Banner. (N.T.3/27/12, vol. II, p. 322).

23. Petitioner made direct eye contact with Officer Bannar and then lowered his hands and head and drove right at Officer Bannar prior to Officer Bannar firing his weapon. (N.T. 3/27/12, vol. II, p. 183).

24. According to petitioner, public defender Norma Beatty represented him at his preliminary hearing before Magisterial District Judge Lippincott. (N.T. 7/14/17 p. 22).

25. According to petitioner, he met with a male public defender at a pre-trial conference and his public defender had an offer from the prosecutor, Assistant District Attorney Brian Doherty. (N.T. 7/14/17 pp. 23-24, 64).

26. According to petitioner, his public defender was Daniel Woody, Esquire, who he described as being a "short kind of stout guy, clean face like a Christmas looking sort of guy like someone you would see at Macy's. Like he was a clean cut happy looking guy." (N.T. 7/14/17 pp. 24-25).

27. Petitioner admitted that he could have been mistaken about which public defender he met with and that it could have been Mr. Bauer rather than Mr. Woody. (N.T. 7/14/17 pp. 26).

28. According to petitioner, the deal presented by the public defender was for either 4 to 7 months or for 4 to 7 years of incarceration for Simple Assault but petitioner could not recall whether it was for months or years. (N.T. 7/14/17 pp. 26-27).

29. According to petitioner, the proposed deal also required the forfeiture of the car which belonged to his mother. (N.T. 7/14/17 pp. 27-28).

30. According to petitioner, he told the public defender that he was innocent but would take the deal, provided that his mother approved of the car being forfeited. (N.T. 71/4/17 pp. 28-29).

4

31.	According to petitioner, he never heard back from the public defender regarding the deal offered by the prosecutor and, by the next time he had his next court appearance, his family had already hired attorney Lacy Wheeler to represent him. (N.T. 7/14/17 p. 29).

32.	According to petitioner, he first met with attorney Lacy Wheeler at the George W. Hill prison to discuss his case and, after discussing payment for his services, spoke about pursuing a suppression motion. (N.T. 7/14/17 pp. 31-32).

33.	According to petitioner, Mr. Wheeler told petitioner that a motion to suppress would be a waste of time because Judge Nilon is pro-police. (N.T. 7/14/17 pp. 32-33).

34.	According to petitioner, he insisted that Mr. Wheeler file a suppression motion. (N.T. 7/14/17 p. 33).

35.	According to petitioner, he explained to Mr. Wheeler about how, when he was stopped in his car, the police were giving him conflicting orders and he was in fear for his life. (N.T. 7/14/17 p. 34).

36.	According to petitioner, he also asked Mr. Wheeler to pursue the deal that had previously been proposed by the prosecutor. (N.T. 7/14/17 p. 34).

37.	According to petitioner, at subsequent meetings with Mr. Wheeler, they discussed how Mr. Wheeler and his investigator had been unsuccessful locating witnesses and petitioner suggested that Mr. Wheeler look into possible cameras from stores in the area which might have recorded the incident. (N.T. 7/14/17 p. 35).

38.	According to petitioner, each time that he met with Mr. Wheeler, he asked Mr. Wheeler about the proposed deal, about pursuing a suppression motion, and about wanting to meet the investigator who was supposed to be finding a video of the incident and locating witnesses. (N.T. 7/14/17 pp. 37-40).

39.	According to petitioner, Mr. Wheeler did not provide him with discovery materials from the prosecutor to review. (N.T. 7/14/17 p. 43).

40.	According to petitioner, at his third meeting with Mr. Wheeler, Mr. Wheeler told him that the Commonwealth was pursuing a mandatory minimum sentence against petitioner as the case constituted a "second strike" for sentencing purposes. (N.T. 7/14/17 p. 44).

41.	Several weeks prior to trial, when payments for legal services were not timely made, Mr. Wheeler contacted petitioner to say that unless he was paid as

5

previously agreed to, he would stop working on petitioner's case. (N.T. 7/14/17 pp. 45-47).

42. According to petitioner, prior to trial, Mr. Wheeler did not share with him what the defense at trial was going to be and Mr. Wheeler did not discuss with petitioner that they would forego a defense of justification. (N.T. 7/14/17 pp. 50-57).

43. According to petitioner, he was surprised when, during trial, Mr. Wheeler told the court that they would not be pursuing a claim regarding justification. (N.T. 7/14/17 pp. 50-53).

44. Prior to trial, by filing a motion in limine, Mr. Wheeler successfully persuaded Judge Nilon to rule that the Commonwealth would not be permitted to discuss the home invasion robbery case from Chester County, in which petitioner was involved, which was why the police from Chester County were looking for petitioner and why the police obtained a search warrant for petitioner's home on Bullen's Lane. (N.T. 7/14/17 pp. 53-56).

45. Because of the ruling by Judge Nilon, and Judge Nilon's insistence that the reasons for the search warrant and the initial stop of petitioner not be disclosed to the jury, the parties stipulated that the police had a lawful basis to stop petitioner's vehicle. (N.T. 7/14/17 p. 55).

46. Petitioner wanted Mr. Wheeler to introduce evidence at trial regarding the bullet holes in his car. (N.T. 7/14/17 p. 558).

47. When, during trial, Mr. Wheeler attempted to use a power point presentation of the photos regarding the bullet holes in the vehicle petitioner had been driving when he was arrested, Mr. Wheeler needed the assistance of the prosecutor, Mr. Doherty, with the power point presentation. (N.T. 7/14/17 p. 59).

48. After petitioner was found guilty in his Delaware County trial, Mr. Wheeler provided petitioner with documents related to petitioner's case from Chester County. (N.T. 7/14/17 pp. 60-62).

49. Petitioner admitted that, prior to his arrest in the instant case, he had a conviction for murder in North Carolina. (N.T. 7/14/17 p. 65).

50. According to petitioner, his public defender did not know about the North Carolina murder conviction and did not ask him about it when they met at the pre-trial conference listing. (N.T. 7/14/17 p.65).

51. According to petitioner, he told his public defender that he was interested in a negotiated plea deal with the Commonwealth. (N.T. 7/14/17 p. 65).

6

52.     Petitioner admitted that during their meetings, Mr. Wheeler explained that he and his investigator searched for witnesses and for video of the incident but had not found anything useful to the defense. (N.T. 7/14/17 pp. 67-68).

53.     Petitioner admitted that prior to being stopped on Bullens Lane, he had been involved in a home invasion robbery in Chester County in which he shot someone. (N.T. 7/14/17 pp. 68-69).

54.     Petitioner admitted that the affidavit of probable cause for the search warrant in the instant case accurately recounts petitioner's participation in the crimes which occurred in Chester County. (N.T. 7/14/17 pp. 69-72).

55.     Petitioner admitted that he entered a guilty plea to charges stemming from the home invasion robbery and shooting in Chester County. (N.T. 7/14/17 pp. 76-77).

56.     According to petitioner, Mr. Wheeler did not explain to him prior to trial that a defense of justification meant admitting to the illegal conduct but providing an explanation for it. (N.T. 7/14/17 pp. 77-78).

57.     According to petitioner, when he asked Mr. Wheeler what their defense at trial was going to be, Mr. Wheeler told him that their defense was based on the conflicting and contradictory statements by the police regarding the incident. (N.T. 7/14/17 p. 79).

58.     Lacy Wheeler is an attorney who has been practicing law for 33 years. (N.T. 7/14/127 p. 85).

59.     Mr. Wheeler's practice is approximately 60% criminal and often involves serious felony cases. (N.T. 7/14/17 p. 85).

60.     Mr. Wheeler entered his appearance in this case after petitioner's preliminary hearing. (N.T. 7/14/7 p. 86).

61.     Before Mr. Wheeler first met with petitioner at the George W. Hill prison, Mr. Wheeler had spoken to Assistant District Attorney Brian Doherty and learned that because of petitioner's prior murder conviction in North Carolina that there would be no plea offer in the instant case. (N.T. 7/14/17 p. 86).

62.     Mr. Wheeler told petitioner that there was no plea offer because of the prior North Carolina murder conviction. (N.T. 7/14/17 p. 86).

7

63. Petitioner did not ask Mr. Wheeler to pursue a plea offer after learning from Mr. Wheeler that the prosecutor was no longer offering a plea deal after learning of the North Carolina murder conviction. (N.T. 7/14/17 pp. 86-87).

64. After speaking with petitioner, Mr. Wheeler and his investigator looked into whether there were any video cameras in the area which might have recorded the incident involving petitioner. (N.T. 7/14/17 pp. 88-89).

65. Mr. Wheeler also explored whether there were any police vehicle cameras which might have captured the incident. (N.T. 7/14/17 pp. 89-90).

66. Mr. Wheeler, after he and his investigator unsuccessfully attempted to locate videotape of the incident, reported the unfavorable news to petitioner. (N.T. 7/14/17 pp. 89-90).

67. Prior to trial, Mr. Wheeler considered possible grounds to suppress evidence and determined that there were no grounds to suppress anything. (N.T. 7/14/17 pp. 90-93).

68. Mr. Wheeler explained to petitioner that there was no statement to the police from petitioner to suppress and that, based upon the incident in Chester County and the information spelled out in the affidavit of probable cause for the search warrant, there was no basis to suppress evidence in the case against him in Delaware County. (N.T. 7/14/17 pp. 90-93).

69. Mr. Wheeler explained that, based upon petitioner's role in the Chester County home invasion robbery involving a shooting by petitioner, the police did not need a warrant to lawfully arrest petitioner. (N.T. 7/14/17 pp. 90-92).

70. Petitioner requested Mr. Wheeler to locate and call Terrell Gordon as a witness at trial. (N.T. 7/14/17 pp. 93-94).

71. When Mr. Wheeler's investigator and Mr. Wheeler located and contacted Mr. Gordon, Mr. Gordon refused to speak to them. (N.T. 7/14/17 pp. 94-95).

72. Mr. Wheeler's trial strategy was to establish that the police officers involved in the incident were all telling different versions of what happened and the testimony of the officer who said petitioner tried to run him over was especially at odds with the accounts of the incident provided by other officers. (N.T. 7/14/17 pp. 95-96).

73. Mr. Wheeler did not pursue a justification defense because it would have required petitioner to admit to the acts that he was accused of doing, namely trying to run over a police officer, and then explain why he had a good reason for doing so. (N.T. 7/14/17 pp. 97-98).

8

74. Petitioner never asked Mr. Wheeler to pursue a defense of justification. (N.T. 7/14/17 p. 98).

75. Petitioner asserted to Mr. Wheeler that he did not try to run over the police officers and was merely trying to avoid getting shot by the police. (N.T. 7/14/17 pp. 98-99).

76. Mr. Wheeler viewed petitioner's assertion of innocence as being legally and factually inconsistent with a defense of justification. (N.T. 7/14/17 pp. 98-99).

77. Prior to trial, Mr. Wheeler made a motion in limine to prevent the Commonwealth from introducing evidence or even referencing the Chester County home invasion robbery or the search warrant for the Bullens Lane residence. (N.T. 7/14/17 pp. 99-100).

78. Judge Nilon granted Mr. Wheeler's motion in limine but acknowledged the legal authority that the police had to stop petitioner in the vehicle. (N.T. 7/14/17 p. 103).

79. Mr. Wheeler explained to petitioner that the Commonwealth would not be allowed to present evidence or ask questions about the Chester County home invasion or the execution of the search warrant on Bullens Lane but the jury would be told that the police had a lawful basis to stop him. (N.T. 7/14/17 p. 103).

80. Mr. Wheeler followed through on any request or directive that petitioner gave him and always explained to petitioner when he was either unsuccessful or unable to do whatever petitioner asked of him. (N.T. 7/14/17 p. 109).

81. Mr. Wheeler sent letters to petitioner threatening to suspend his work on petitioner's case if he was not paid to in a timely fashion as agreed. (N.T. 7/14/17 p. 110).

82. Despite sending letters threatening to suspend work on petitioner's case, Mr. Wheeler never actually stopped work on petitioner's case or failed to do something or was untimely in anything as a result of a dispute over being timely compensated. (N.T. 7/14/17 pp. 110-11).

83. Although Mr. Wheeler provided petitioner with the documents regarding petitioner's case from Chester County after the trial in Delaware County was completed, Mr. Wheeler and petitioner discussed the information regarding the Chester County case prior to trial in preparation for trial in Delaware County. (N.T. 7/14/17 pp. 111-113).

9

84. Contrary to petitioner's assertions, he was represented by public defender Jeffrey Bauer and not by Daniel Woody. (N.T. 7/14/17 p. 115).

85. On January 14, 2012, attorney Bauer, while representing petitioner, obtained a negotiated plea offer from prosecutor Brian Doherty in which the Commonwealth offered petitioner a plea to Aggravated Assault in which petitioner would be sentenced to a term of from 4 ½ to 10 years of imprisonment, petitioner would not be RRRI eligible, and the car driven by petitioner during the incident would be forfeited, plus petitioner would be required to provide a DNA sample because the case involved a felony conviction. (N.T. 7/14/17 p. 116).

86. Attorney Bauer memorialized the offer from prosecutor Doherty by writing it on the public defender file for the case involving petitioner. (N.T. 7/14/17 pp. 116-117).

87. The written memorialization made by attorney Bauer was marked and made part of the record in this matter. (N.T. 7/14/17 pp. 128-130, 150).

88. After receiving the Commonwealth's offer, attorney Bauer met with petitioner in the holding cell in the basement of the courthouse. (N.T. 7/14/17 p. 117).

89. Attorney Bauer conveyed to petitioner the Commonwealth's offer regarding a negotiated guilty plea to Aggravated Assault; explained what each of the terms meant; and he explained what the applicable sentencing guidelines were for the offense. (N.T. 7/14/17 p. 117-120).

90. Attorney Bauer explained to petitioner that he thought the offer was reasonable because it was in the standard range of the sentencing guidelines if not in the mitigated range. Attorney Bauer recommended that petitioner accept the Commonwealth's offer. (N.T. 7/14/17 p. 120, 123).

91. Upon attorney Bauer conveying the Commonwealth's offer to petitioner, and making a recommendation to accept it, petitioner made it clear to attorney Bauer that he was not interested in the offer and wanted to proceed to trial. (N.T. 7/14/17 p. 121).

92. Petitioner acted as though the Commonwealth's offer was ludicrous and he told attorney Bauer that he needed attorney Bauer to help him prepare for trial. (N.T. 7/14/17 p. 121).

93. Towards that end, petitioner proceeded to give attorney Bauer a list of things that he wanted attorney Bauer to do and attorney Bauer wrote the information down on the file. (N.T. 7/14/17 pp. 121-123).

10

94. At the time of the offer, according to Mr. Bauer, Mr. Doherty had some information about petitioner's prior murder conviction from out-of-state but had not yet confirmed the information and Mr. Bauer noted that in his file as well. (N.T. 7/14/17 p. 122).

95. Attorney Bauer told petitioner that the prior conviction for murder could become an issue and he recommended to petitioner that he take the offer. (N.T. 7/14/17 pp. 122-123).

96. After petitioner told attorney Bauer that he was not interested in the offer, attorney Bauer told prosecutor Doherty. (N.T. 7/14/17 pp. 123-124).

97. Attorney Bauer and prosecutor Doherty then stood before Judge Nilon and put on the record that they were asking for a trial date and that attorney Bauer agreed to waive his client's presence in the courtroom at the pre-trial conference. (N.T.7/14/17 p. 124).

98. After the pre-trial conference meeting with petitioner, attorney Bauer began to work on the list of items that petitioner had requested. He made arrangements to view the vehicle to look for bullet holes. Mr. Bauer began to prepare a list of surrounding businesses that might have video surveillance cameras which could have recorded the incident. He contacted Chester Police Officer Gretsky, as requested by petitioner, to get information about the impound lot where the car was being stored. (N.T. 7/14/17 pp. 125-126).

99. While working on petitioner's case, attorney Bauer learned that Lacy Wheeler had been hired and that Mr. Bauer's services were no longer required on behalf of petitioner. (N.T. 7/14/17 p. 126).

100. Mr. Bauer confirmed that Mr. Woody never represented petitioner in the matter. (N.T. 7/14/17 p. 131).

101. Mr. Wheeler was hired by petitioner's mother, Ms. Martinez, to represent petitioner. (N.T. 8/10/17 p. 5).

102. While representing petitioner, Mr. Wheeler showed petitioner material he received from the Commonwealth in discovery, however, he did not generally provide petitioner with copies of the documents. (N.T. 8/10/17 p. 10).

103. Mr. Wheeler and his investigator investigated whether there were any video records of the incident made by local businesses or by the police but they did not find any such records. (N.T. 8/10/17 pp. 12-14).

104. Prior to trial, Mr. Wheeler received discovery information and materials from the Commonwealth regarding the Bullens Lane incident and search warrant

11

and the home invasion robbery which occurred in Chester County. (N.T. 8/10/17 pp. 15-16).

105.    Mr. Wheeler acknowledged sending letters to petitioner threatening to suspend work on the case or withdraw his appearance if he was not paid for his services. (N.T. 8/10/17 pp. 17-20).

106.    Mr. Wheeler also acknowledged that he fully expected to stay in the case and not be allowed by Judge Nilon to withdraw his appearance and he explained that he sent the letters to try to light a fire about getting paid but did not actually suspend work on the case. (N.T. 8/10/17 pp. 19-20).

107.    Mr. Wheeler stated that he did not file a suppression motion in this case challenging the legality of the stop of petitioner on Bullens Lane because there was no basis to challenge the legality of the stop. (N.T. 8/10/17 pp. 28-29).

108.    After the Delaware County trial was completed, Mr. Wheeler sent petitioner copies of the material regarding his upcoming case in Chester County which materials Mr. Wheeler received prior to the Delaware County trial. (N.T. 8/10/17 pp. 29-32).

109.    When Mr. Wheeler first entered his appearance, he spoke to prosecutor Doherty regarding a plea offer and learned from Mr. Doherty that there would be no offer because the Commonwealth had confirmed the information regarding the North Carolina murder conviction. (N.T. 8/10/17 pp. 32-33).

110.    Mr. Wheeler's trial strategy in defending petitioner at trial was based upon the contradictions and discrepancies among the police officers who were involved in the incident which arguably provided reasonable doubt regarding whether petitioner attempted to run over a police officer under the circumstances which included the police shooting at petitioner. (N.T. 8/10/17 pp. 35-37).

111.    Mr. Wheeler never stopped working on petitioner's case even though he threatened to do so based upon the failure by petitioner's family to pay him timely. (N.T. 8/10/17 p. 40).

112.    Mr. Wheeler explained to petitioner, prior to trial, that it was petitioner's decision as to whether or not to testify but that Mr. Wheeler was recommending that he not testify under the facts and circumstances of this case. (N.T. 8/10/17 pp. 42-43).

113.    Glenn Bretz is a detective with the Westtown-East Goshen Police Department in Chester County with over 25 years of experience. (N.T. 8/10/17 p. 50).

12

114. Detective Bretz was involved in the investigation of the Chester County home invasion robbery and in the execution of a search warrant on Bullens Lane in Delaware County. (N.T. 8/10/17 pp. 51-53).

115. Detective Bretz observed petitioner exit the house on Bullens Lane and get into a car. (N.T. 8/10/17 p. 57).

116. Although the warrant for petitioner's arrest in Chester County was not served on him until October 18, the police, including Detective Bretz, was aware of petitioner's role in the Chester County home invasion robbery and shooting on October 14 when they stopped and arrested him as the Bullens Lane property was being searched. (N.T. 8/10/17 pp. 51-53).

117. Assistant District Attorney Brian Doherty was the prosecutor assigned to the Delaware County case involving petitioner at Delaware County Dkt. No. 6415-11. (N.T. 8/10/17 p. 56).

118. Prosecutor Doherty conveyed to public defender Jeffrey Bauer an offer on January 4, 2012, in which the petitioner would plead guilty to Aggravated Assault and would be sentenced to a term of from 4 ½ to 10 years of imprisonment. (N.T. 8/10/17 pp. 56-67).

119. Mr. Doherty made contemporaneous notes in his file regarding the offer. (N.T.8/10/1 p. 57).

120. The inside of the District Attorney's file has in it, written in blue ink, a note saying on Count # 3, Aggravated Assault, a 1st degree felony, the offer to 4 ½ to 10 years in a State Correction Institution, no RRRI eligibility, and forfeiture of the car involved and the note was copied and admitted as an exhibit in the PCRA hearing. (N.T. 8/10/17 pp. 57-58, 69-71).

121. When, at the pre-trial conference listing, Mr. Bauer returned to court after speaking with petitioner, Mr. Bauer told Mr. Doherty that the Commonwealth's offer had not been accepted. (N.T. 8/10/17 p. 58).

122. After the pre-trial conference, Mr. Doherty e-mailed discovery to Mr. Bauer. (N.T.8/10/17 pp. 58-59).

123. Mr. Doherty also informed Mr. Bauer that the matter in North Carolina could affect whether there would be an offer and, if so, what the offer would be, but Mr. Doherty had not yet confirmed the information regarding a murder conviction as of the date of the pre-trial conference. (N.T. 8/10/17 pp. 58-59).

13

124. In late January of 2012, Mr. Doherty received confirmation of petitioner's murder conviction from North Carolina and withdrew the offer which had previously been extended to petitioner. (N.T. 8/10/17 p. 60).

125. When Mr. Wheeler entered his appearance, Mr. Doherty made it clear to Mr. Wheeler that there would been no offer from the Commonwealth because of the petitioner's conviction in North Carolina. (N.T. 8/10/17 p. 61).

126. Mr. Wheeler, in conversation with Mr. Doherty, made it clear that his client wanted a trial. (N.T.8/10/17 p. 61-62).

127. Mr. Wheeler inquired to Mr. Doherty about possible video recordings by the police. (N.T. 8/10/17 p. 62).

128. After checking with the police officers involved in the incident on Bullens Lane, Mr. Doherty informed Mr. Wheeler that there were no videos because the police vehicles involved were not equipped to videotape the incident. (N.T.8/10/17 pp. 62-63)

129. Petitioner's PCRA hearing testimony regarding the incident in which he drove at Officer Bannar, is not credible.

130. Petitioner's PCRA hearing testimony, asserting that attorney Bauer did not properly convey to petitioner the plea offer from the Commonwealth, is not credible.

131. Petitioner's PCRA hearing testimony, claiming that he directed attorney Wheeler to pursue a suppression motion, is not credible.

132. Petitioner's PCRA hearing testimony, claiming that Mr. Wheeler did not explain a justification defense and suggesting that he told Mr. Wheeler to pursue a justification defense, is not credible.

133. Petitioner's PCRA hearing testimony, claiming that Mr. Wheeler did not explain his trial strategy with petitioner, is not credible.

134. Petitioner's PCRA hearing testimony, asserting that he wanted to pursue a guilty plea, is not credible.

135. The PCRA hearing testimony of attorney Bauer is credible.

136. The PCRA hearing testimony of attorney Wheeler is credible.

14

137. The trial and PCRA hearing testimony of Detective Bretz is credible.

138. The PCRA hearing testimony of Brian Doherty is credible.

139. Prior to trial, Mr. Doherty obtained information from Chester County officials regarding the home invasion robbery and shooting involving petitioner and the search warrant for the home on Bullens Lane. (N.T. 8/10/17 p. 64).

140. Mr. Doherty timely provided all the information to Mr. Wheeler which he received from Chester County officials. (N.T. 8/10/17 pp. 64-65).

141. Mr. Doherty intended to introduce at trial evidence regarding the home invasion robbery in Chester County and the execution of a search warrant at the house on Bullens Lane to provide context for why the police were stopping petitioner in Delaware County. (N.T. 3/10/17 p. 65).

142. Mr. Wheeler made a motion in limine to preclude such evidence and the trial court granted the motion. (N.T. 8/10/17 pp. 65-66).

143. By eliminating the context for the stop of petitioner, Mr. Doherty and Mr. Wheeler could only stipulate that the police had a lawful basis to stop petitioner rather than Mr. Doherty presenting evidence to explain why the police were treating petitioner as a serious and violent felon. (N.T. 8/10/17 pp. 65-67).

144. Consequently, during trial Mr. Wheeler was able to make arguments regarding the manner in which the police stopped petitioner which, he asserted, were wholly unwarranted. (N.T. 8/10/17 p. 67).

## PROCEDURAL HISTORY:

Appellant was arrested and charged on October 14, 2011. On January 25, 2012, Lacy R. Wheeler II, Esquire entered his appearance for the Defendant. On March 12, 2012, the Defendant's Motion in Limine pursuant to Pa.R.E. 404(b) was granted.

On March 12, 2012, the court granted the Appellant's Motion in Limine excluding: (1) any reference to the Appellant's past criminal activity and (2) the reasons why the Appellant was being investigated and stopped on October 14, 2011, because the prejudicial effect of such testimony would substantially outweigh any probative value. (N.T. 3/12/2012 pp. 7-8); *see*

15

Pa.R.E. 404(b). The parties stipulated that "the police officers were legally authorized to stop the Defendant's vehicle." (N.T. 3/27/2012 p. 113).

On March 28, 2012, the Defendant was tried on only two charges: Criminal Attempt-Homicide and Aggravated Assault. All remaining charges were withdrawn prior to trial. He was convicted after a two-day Jury Trial of Aggravated Assault[1]. (N.T. 3/28/2012 p. 246). He was found Not Guilty of Attempted Murder. (N.T. 3/28/2012 pp. 245-246). That same day, the Defendant's request for a Pre-Sentence Investigation, Drug and Alcohol evaluation, and a Psychological evaluation were granted. (N.T. 3/28/2012 pp. 251-252). On April 17, 2012, Defendant's post-sentence "Motion for New Trial" was denied.

On May 8, 2012, Defendant was sentenced on Information 3, Aggravated Assault, to one-hundred twenty (120) to two-hundred forty (240) months imprisonment because this was Petitioner's second strike under 42 Pa.C.S. § 9714. On May 10, 2012, Defendant's "Motion for Judgment of Acquittal and Motion for a New Trial" was denied. On June 7, 2012, the Defendant filed a timely Notice of Appeal. On January 24, 2013, the Pennsylvania Superior Court affirmed the Judgment of Sentence.[2]

On October 28, 2013, Appellant filed a *pro se* PCRA petition, counsel was appointed, and on April 24, 2014, Judge Nilon granted an order reinstating Appellant's right to appeal his direct appeal case to the Pennsylvania Supreme Court. On August 21, 2014, the Pennsylvania Supreme Court issued an order denying the Petition for Allowance of Appeal.[3]

---

[1] 18 Pa.C.S. § 2702 (a)(2).

[2] The court issued a non-precedential decision. *See* 1704 EDA 2012.

[3] *See* 2303 MAL 2014.

16

On January 29, 2015, Appellant filed a *pro se* PCRA petition. On February 4, 2015, Stephen Molineux, Esquire was appointed as PCRA counsel. On February 1, 2016, an amended PCRA petition was filed by counsel. A PCRA evidentiary hearing was held before Judge Nilon on July 14, 2017, and on August 10, 2017.

During the PCRA evidentiary hearing, PCRA counsel presented petitioner as a witness and the Commonwealth presented Lacy Wheeler, Esquire (trial counsel), Jeffrey Bauer, Esquire (petitioner's public defender prior to trial), Assistant District Attorney, Brian Doherty, Esquire (the prosecutor) and Westtown East Goshen Police Officer Glenn Bretz as witnesses.

The Honorable James F. Nilon, Jr. retired from the Delaware County Court of Common Pleas in December of 2017. The undersigned was reassigned this matter in February of 2018 and has fully reviewed the entire court file and the transcripts from the relevant proceedings.

The court denied the PCRA. On June 14, 2018, a Notice of Appeal was filed and counsel simultaneously filed a Concise Statement of Matters Complained of on Appeal. Appellant filed a Concise Statement raising the following issues for appellate review:

1. Whether the PCRA Court erred in denying Petitioner's PCRA petition where the record clearly showed that trial counsel was ineffective for failing to file a motion to suppress the arrest for lack of probable cause?
2. Whether the PCRA Court erred in denying Petitioner's PCRA petition where the record clearly showed that trial counsel was ineffective for failing to seek a jury instruction regarding "justification" where the defense was that Defendant was justified in moving his car because he was in fear for his life after the police opened fire on him?
3. Whether the PCRA Court erred in denying Petitioner's PCRA petition where the record clearly showed that trial counsel was ineffective for failing to object to inferences by Commonwealth witnesses that Defendant was involved in criminal activity and was under investigation by East Goshen Police?
4. Whether the PCRA Court erred in denying Petitioner's PCRA petition where the record clearly showed that trial counsel was ineffective in failing to properly advise Defendant regarding the plea offer?

17

## DISCUSSION

The standard of review of a PCRA court's dismissal of a PCRA petition is limited to a determination of whether the conclusion is supported by the evidence of record and free of legal error. *Commonwealth v. Boyer*, 962 A.2d 1213, 1214 (Pa. Super. 2008).

The PCRA provides relief for petitioners whose convictions resulted from ineffectiveness of counsel. 42 Pa.C.S. § 9543 (a)(2)(ii). The test for determining whether counsel was ineffective is composed of three prongs. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987); *citing Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Petitioner must prove: (1) that the claim(s) are of arguable merit, (2) that counsel had no reasonable strategic basis for his action or inaction, and (3) prejudice, i.e., but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. *Id.*; *see also Commonwealth v. Kimball*, 555 Pa. 299, 312, 724 A.2d 326, 333 (1999). The failure to satisfy any prong of *Pierce*'s three-part test will cause the claim to fail. *Commonwealth v. Gonzalez*, 858 A.2d 1219, 1222 (Pa. Super. 2004).

The law presumes counsel has rendered effective assistance, and it is the petitioner's burden to prove otherwise. 42 Pa.C.S. § 9543 (a)(2)(ii); *Gonzalez*, 858 A.2d at 1222. The petitioner must prove the ineffectiveness by a preponderance of the evidence. 42 Pa.C.S. § 9543; *Commonwealth v. Banks*, 540 Pa. 143, 148, 656 A.2d 467, 469 (1995). The reasonableness of counsel's decisions cannot be based on a distorted hindsight review. *Commonwealth v. Saranchak*, 581 Pa. 490, 510, 866 A.2d 292, 304 (2005)

The threshold inquiry in ineffectiveness claims is whether the basis for counsel's action or inaction, which forms the basis for the ineffectiveness claim, is of arguable merit. *Commonwealth v. Pierce*, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994). Counsel cannot be found

18

ineffective for failing to pursue a baseless or meritless claim. *Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa. Super. 2004).

Once the threshold inquiry is met, the "reasonable basis" test is used to "determine whether counsel's chosen course was designed to effectuate his client's interest. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective." *Commonwealth v. Pierce*, 645 A.2d at 194-195. The petitioner bears the burden during PCRA proceedings of proving all elements of ineffective assistance, including prejudice. *Commonwealth v. Spotz*, 582 Pa. 207, 227, 870 A.2d 822, 834 (2005). The test for prejudice at the PCRA stage is more exacting than the harmless error standard applied on direct appeal. *Id.* Guided by these standards, the court turns to Appellant's claims of ineffectiveness.

## 1. TRIAL COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO PURSUE A MOTION TO SUPPRESS THE STOP AND ARREST OF PETITIONER WHERE THE STOP AND ARREST WAS SUPPORTED BY PROBABLE CAUSE.

Petitioner contends that the police lacked probable cause to stop and arrest him on October 14, 2011, in Ridley Township. Petitioner argues that, although the police may have had probable cause to search the residence on Bullens Lane, they did not have probable cause to arrest him on October 14, 2011. Therefore, according to Petitioner, trial counsel was ineffective for failing to file a motion to suppress the stop and arrest in this case. (*See* Amended PCRA No.11). This claim is meritless.

The law in Pennsylvania provides that where a defendant alleges that counsel ineffectively failed to pursue a suppression motion, the inquiry is whether the failure to file the motion is itself objectively unreasonable, which requires a showing that the motion would be

19

meritorious. *See Commonwealth v. Melson*, 556 A.2d 836, 839 (Pa. Super. 1989). Where an ineffectiveness claim is based on the failure of counsel to move for suppression of evidence, "the defendant must establish that there was no reasonable basis for not pursuing the suppression claim and that if the evidence had been suppressed, there is a reasonable probability the verdict would have been more favorable." *Commonwealth v. Arch*, 654 A.2d 1141, 1143 (Pa. Super. 1995) quoting *Commonwealth v. Melson*, 556 A.2d 836, 839 (Pa. Super. 1989).

In the instant case, when Appellant was stopped while driving his vehicle on Bullens Lane, the police had probable cause to believe that his residence at 1746 Bullens Lane in Ridley Township contained the fruits of a robbery and home invasion in Chester County, Pa. In addition, they had probable cause to believe that Appellant was involved in the home invasion and had shot the resident, Juston Czajkowski. The affidavit of probable cause for the search warrant established that Appellant was involved in the home invasion/robbery and was the shooter. At the PCRA hearing, the Appellant admitted pleading guilty to the "home invasion robbery and shooting in Chester County." (N.T. 7/14/17 pp. 76-77). The information which provided the police with probable cause to arrest Appellant was set forth in the affidavit in support of the search warrant and was known to the police on October 14, 2012, when Appellant was stopped and arrested on Bullens Lane. (N.T. 8/10/17 pp. 51-53).[4]

To be constitutionally valid, a warrantless stop and arrest must be based upon probable cause. *Commonwealth v. Clark*, 558 Pa. 157, 735 A.2d 1248 (1999) (*Gates* totality of the circumstances test applies to warrantless arrests). "Probable cause to effectuate an arrest exists when the facts and circumstances within the knowledge of the arresting officer are reasonably

---

[4] The Search Warrant and Affidavit were admitted into evidence at the PCRA evidentiary hearing and labeled "PCRA -D5."

20

trustworthy and sufficient to justify a person of reasonable caution in believing that the arrestee has committed an offense." *Commonwealth v. Rickabaugh*, 706 A.2d 826 (Pa. Super. 1997), appeal denied 558 Pa. 607, 736 A.2d 603 (1999). "It is only the probability, and not a *prima facie* showing, of criminal activity that is the standard of probable cause for a warrantless arrest." *Commonwealth v. Quiles,* 619 A.2d 291, 298 (Pa. Super. 1993) (en banc).

Pursuant to the Pennsylvania Rules of Criminal Procedure, the police were authorized to make a warrantless arrest of Appellant based upon the facts of this case. Pa.R.Crim.P. 502 provides as follows:

### Rule 502.  Instituting Proceedings in Court Cases.

Criminal proceedings in court cases shall be instituted by:
(1)     filing a written complaint; or

(2)     an arrest without a warrant:

> (a) when the offense is a murder, felony, or misdemeanor committed in the presence of the police officer making the arrest; or
> (b) <u>upon probable cause when the offense is a felony or murder;</u> or
> (c) upon probable cause when the offense is a misdemeanor not committed in the presence of the police officer making the arrest, when such arrest without a warrant is specifically authorized by statute.

Pa.R.Crim.P. 502 (emphasis added).

The police involved in stopping the Appellant in his car and later arresting him, had probable cause to make a warrantless arrest.  They knew he was the shooter in a home invasion/robbery in Chester County and was therefore a felon. (See Affidavit of Probable Cause). While conducting the stop of Appellant's vehicle, he accelerated his vehicle towards Officer Bannar. (N.T. 3/27/12 vol. I p.179). There was ample probable cause to stop and arrest Appellant. Therefore, there was no legal basis upon which counsel could file a motion to suppress the arrest for lack of probable cause.

In addition, assuming *arguendo* that Appellant was illegally stopped for lack of probable cause, a suppression still fails in this matter. The Superior Court has held in the case of *Commonwealth v. Britt,* 691 A.2d 494, 497–98 (Pa. Super. 1997) "if the police effectuate an arrest and the arrestee physically resists the officer, and subsequently the arrest is deemed to be without probable cause, nevertheless, the arrestee is guilty of aggravated assault because the officer was within the "performance of duty" when effectuating the arrest." *Id* at 497. The Court concluded:

> Appellee was not justified in resisting the officers' approach, and his conduct in fleeing from the officers after they had identified themselves as police constituted the type of conduct designed to inflict bodily injury upon the officers during the performance of their duty that is contemplated by subsection (a)(3) of the aggravated assault statute. Although the record supports the suppression court's conclusion that the officers did not have probable cause to arrest Appellee based upon the information supplied by the informant, Appellee had no lawful reason to flee the officers in such a violent, reckless manner, whereby he evinced a blatant disregard for the officers' safety and in fact caused physical harm to one of the officers…Accordingly, the subsequent arrest of Appellee was valid, and all evidence obtained pursuant thereto was lawfully seized.

*Commonwealth v. Britt, supra* 691 A.2d 497–498.

In the case *sub judice*, the police had probable cause to stop and arrest Appellant on Bullens Lane based upon the trustworthy information known to them regarding the Chester County home invasion/robbery. Even if the police lacked probable cause to stop the Appellant, he had no lawful reason to flee the officers in such a violent, reckless manner. *Britt*. Therefore, the Appellant had no legal basis to file a motion to suppress the arrest and thus trial counsel could not be deemed ineffective for failing to file such a motion.

The grounds underpinning the motion to suppress are without merit, so counsel will not be deemed ineffective for failing to so move. The Appellant has failed to establish that there was

22

no reasonable basis for not pursuing the suppression claim and that if the suppression had been granted, there is a reasonable probability the verdict would have been more favorable. *Commonwealth v. Watley*, 153 A.3d 1034, 1044 (Pa. Super. 2016). The Appellant has failed to prove each prong of trial counsel ineffectiveness, and therefore, he has failed to make out the arguable merit prong in his claim of PCRA counsel's ineffectiveness. Appellant's claim of ineffectiveness is meritless.

## 2. TRIAL COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO SEEK A JURY INSTRUCTION REGARDING "JUSTIFICATION" WHERE APPELLANT DENIED ANY WRONGDOING

Appellant contends that trial counsel was ineffective for failing to request a jury instruction regarding justification because Appellant asserted that he was in fear for his life after the police shot at him. According to Appellant, a justification defense is viable where the defendant reasonably believes that he is in genuine danger of death or serious bodily injury while being arrested. According to Appellant, his actions in this case were entirely an attempt at self-preservation to avoid being shot and were reasonable under the circumstances. He is mistaken.

The Crimes Code provides as follows regarding the defense of justification:

**Rule §505. Use of force in self-protection.**

**(a)     Use of force justifiable for protection of the person.** -The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

**(b)**     Limitations on justifying necessity for use of force.-
(1)     The use of force is not justifiable under this section:
(i)     to resist an arrest which the actor knows is being made by a peace officer, although the arrest is unlawful; or ...

18 Pa.C.S. §505(a) and (b). Here, the Appellant would be prevented from using a justification instruction because the Appellant was using force to resist an arrest. §505(b).

23

In addition, according to Appellant's version of the facts, after initially being stopped, he was trying to comply with the police officers' commands by keeping his hands up and the police fired at him before he accidently started to move the car. (N.T. 7/14/17 pp. 17-18). According to Appellant, he was not trying to strike the police officers with his car, he maneuvered the car about 50 yards to avoid being shot. (N.T. 7/14/17 pp. 19-21). Appellant testified at the PCRA hearing: "...I specifically continued to tell Lacy Wheeler that I was innocent and I had a reason to move my car and the reason I moved my car was fear of my life because the officers started shooting at me." (N.T. 7/14/17 p. 38).

Appellant's version of events proclaims his innocence and denies any wrongdoing on his part. He has, therefore, denied the very conduct which he supposedly seeks to justify, namely, using deadly force in defense of himself.

In addition, trial counsel Lacy Wheeler, Esquire, credibly testified at the PCRA hearing:

> Q. Now did you pursue a justification defense in this matter?
> A. No because a justification defense would require that my client would have to say yeah I did it but I am justified in doing it.

(N.T. 7/14/17 p. 97).

Mr. Wheeler testified that prior to trial Appellant specifically denied attempting to strike the officers to avoid being shot. (N.T. 7/14/17 pp. 98-99). Prior to trial, when Mr. Wheeler explained to Appellant that a justification defense involved admitting to the conduct alleged i.e., trying to run over the police officers with his car, and then explaining why it was necessary and reasonable, petitioner insisted that he never attempted to strike the officers. (N.T. 7/14/17 p. 98-99).

A justification jury instruction was not consistent with the Appellant's theory of the case at trial or even with his own version of events at the PCRA hearing. His trial counsel was not

24

ineffective for failing to pursue a defense of justification where Appellant denied trying to run over the police officers and maintained that he did not do what he was accused of doing.

**3.      TRIAL COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO OBJECT TO ALLEGED INFERENCES BY A COMMONWEALTH WITNESS THAT DEFENDANT WAS INVOLVED IN CRIMINAL ACTIVITY AND WAS UNDER INVESTIGATION BY EAST GOSHEN POLICE.**

Appellant contends that trial counsel was ineffective for failing to object to alleged inferences that "Defendant was involved in criminal activity and was under investigation by the East Goshen Police" during the testimony of a Commonwealth witness. Specifically, Detective Bretz testified at trial that he was engaged in an undercover operation when he was observing an address located at 1746 Bullens Lane Woodlyn, Delaware County, Pa. He observed a man leave that address and drive away in a Chevy Impala. He identified the man as the Defendant. (N.T. 3/27/17 pp. 152-160). According to Appellant, the jury could easily infer that the reason Detective Bretz was observing that address was because of prior criminal activity committed by Appellant. Appellant contends he was unfairly prejudiced because of the purported inference and is entitled to a new trial. He is mistaken.

On February 28, 2012, Appellant's trial counsel filed a pre-trial motion entitled "Motion in Limine to Exclude Under Pennsylvania Rules of Evidence 404". After a hearing before the trial judge, the motion was granted, and counsel was successful in precluding evidence of Appellant's prior murder conviction from coming into evidence. (N.T. 3/12/12 pp.3-11). In addition, he was successful in precluding evidence mentioning "any pending criminal charges in another jurisdiction or county in Pennsylvania that have yet to be finally adjudicated into evidence by either documented evidence and/or evidence elicited from a witness at trial." This reference was to a Chester County home invasion/robbery in which the Appellant shot someone. The police were executing a search warrant at Appellant's home at the time he was stopped in

25

this incident. Appellant admitted at the PCRA evidentiary hearing that he pled guilty to the Chester County charges. (N.T. 7/14/17 pp. 76-77).

Ordinarily, the Commonwealth would be permitted at trial to present some evidence regarding such events to provide the jury with some context for the actions which occurred on October 14, 2011. Such evidence of prior crimes would be considered "*res gestae*" evidence and considered admissible for the limited purpose of providing context. Moreover, such evidence would usually be the subject of a limiting or cautionary instruction.

Here, Judge Nilon provided greater protection from possible prejudice by granting the motion in limine. The Commonwealth presented the jury with a very neutral version of the facts outlining events just prior to Appellant's stop by police. Detective Bretz testified as follows:

> Q. And were you in a patrol vehicle? What were you doing there?
> A. We were just doing an investigation.

(N.T. 3/27/12 p. 154); *See also* (N.T. 3/27/12 pp. 153-160).

The jury never actually knew that the Appellant was engaged in prior criminal activity, which was the reason for the vehicle stop in this case. Appellant cannot complain about possible "inferences" the jury may have made from the benign testimony of the Commonwealth witness. On the contrary, trial counsel successfully argued to prevent the jury from learning the truth related to the vehicle stop. There simply was no need to object to any of the Commonwealth witness's testimony.

Trial counsel implemented a reasonable strategy for not objecting to the testimony of Detective Bretz, especially given the prejudicial evidence which trial counsel successfully prevented the jury from hearing. Trial counsel was not ineffective for failing to object to the limited testimony of Detective Bretz which simply explained that there was some sort of undercover investigation taking place prior to Appellant being stopped.

26

The Appellant failed to produce evidence at the PCRA evidentiary hearing that counsel's chosen course of action had no reasonable basis designed to effectuate his client's interests. Ultimately, it is the Appellant's burden to prove all three prongs of the ineffectiveness standard and Appellant has failed to satisfy this burden. *Commonwealth v. Koehler*, 36 A.3d 121, 146 (Pa. 2012).

The Pennsylvania Supreme Court has opined:

> This Court has recognized that "(c)ounsel are not constitutionally required to forward any and all possible objections at trial, and the decision of when to interrupt oftentimes is a function of overall defense strategy being brought to bear upon issues which arise unexpectedly at trial and require split-second decision-making by counsel." *Commonwealth v. Spotz*, 582 Pa. 207, 870 A.2d 822, 832 (2005). Under some circumstances, trial counsel may forego objecting to an objectionable remark or seeking a cautionary instruction on a particular point because "(o)bjections sometimes highlight the issue for the jury, and curative instructions always do." *Id.*
>
> Our recent decision in *Lesko* illustrates this point. There, the PCRA petitioner contended that trial counsel was ineffective for failing to request an appropriate limiting instruction when the trial court admitted evidence of the petitioner's prior bad acts. In rejecting the claim, we recognized that "(i)t is well settled that the decision whether to seek a jury instruction implicates a matter of trial strategy." *Id.* at 401 (citations omitted) ...

*Koehler, supra*, 36 A.3d at 146-7.

Appellant's trial counsel was not ineffective for failing to object to the Detective's testimony. Appellant has failed to satisfy his burden of proof, and his ineffectiveness claim fails.

## 4. PRIOR COUNSEL WERE NOT INEFFECTIVE REGARDING THEIR HANDLING OF A PLEA OFFER FROM THE COMMONWEALTH.

Appellant claims that trial counsel, Jeff Bauer, Esquire and Lacy Wheeler, Esquire, were ineffective regarding their handling of a plea offer from the Commonwealth. According to Appellant, public defender Bauer advised Appellant to reject a plea offer of 4 to 7 years or

27

months[5] imprisonment for Simple Assault. (N.T. 7/14/17 pp. 26-28, 41-42). Appellant also asserts that attorney Bauer failed to inform petitioner of the Commonwealth's offer. According to Appellant, he would have accepted the offer if it had been properly conveyed and properly explained. *Id.* He is wrong.

The credible facts in this case are that attorney Bauer properly conveyed the Commonwealth's plea offer to petitioner and recommended that petitioner accept the offer. (N.T. 7/14/17 pp. 116-123). Despite the recommendation by Attorney Bauer, petitioner rejected the offer. As Attorney Bauer credibly testified at the PCRA evidentiary hearing when asked about the Appellant's reaction to the Commonwealth's offer:

> A. ...it was made clear to me by Mr. Johnson that he did not want that offer and that he intended to go to trial.
> ...
> I remember his demeanor was not particularly friendly or unfriendly, but I do remember him actually chuckling when I gave him, when I conveyed the offer of four and a half to ten years, as if it were ludicrous. He said no I'm not going to accept that we are going to trial and here is what you need to do to help me prepare for trial.

(N.T. 7/14/17 p. 121).

By the time that Attorney Wheeler entered his appearance, the Commonwealth's offer was withdrawn based upon Appellant's prior murder conviction in North Carolina. (N.T. 8/10/17 pp. 60-61). Moreover, even after Attorney Wheeler entered his appearance, Appellant made it clear to everyone that he was not interested in a guilty plea and wanted to proceed to trial. (N.T. 8/10/17 p. 61-62) *See also* (N.T. 7/14/17 pp. 86-88).

Appellant's claim regarding purported ineffectiveness of counsel regarding handling of the Commonwealth's plea offer should be rejected as meritless.

_____

[5] Appellant testified at the PCRA hearing that he was unsure if the offer was for years or months. (N.T. 7/14/17 p. 27).

28

## CONCLUSION:

Under the PCRA, a petitioner has the burden of proof to establish entitlement to relief by a preponderance of the evidence. *Strickland v. Washington, supra,* 42 Pa.C.S. §9541, *et. seq.* To establish a basis for his PCRA relief, a petitioner must prove that he had claims of arguable merit and that trial counsel had no reasonable or strategic basis for the alleged action or omission, and but for the alleged ineffective assistance, there was a reasonable probability that the outcome of the case would have been different. *Strickland v. Washington, supra; Commonwealth v. Busanet, supra; Commonwealth v. Wallace, supra.*

Attorney Bauer and Attorney Wheeler provided constitutionally effective assistance to Appellant during the time that each attorney represented petitioner. Appellant has failed to meet his burden of proof under the PCRA. Petitioner is not entitled to PCRA relief.

For the foregoing reasons, the Court's Order dismissing Appellant's Petition should be affirmed on appeal.

BY THE COURT:

_____

JOHN P. CAPUZZI, SR.,      J.

29